**RED SKY, INC. t/a Payless for Beer & Pop Everyday**

v.

**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant. (Four Cases)**

**BEER & POP WAREHOUSE, INC.**

v.

**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant.**

**Q.F.A., INC.**

v.

**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant.**

**JET DISTRIBUTORS, INC. t/a Beer & Pop Warehouse**

v.

**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant. (Two Cases)**

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 1994.

Decided Jan. 12, 1995.

Richard G. Parker, Asst. Counsel, for appellant.

Roslyn M. Litman, for appellees.

Before McGINLEY and PELLEGRINI, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.[1]

The Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) appeals the orders of the Court of Common Pleas of Allegheny County (trial court) reversing the decision of the Pennsylvania Liquor Control Board (LCB) and dismissing citations against beer distributors Red Sky, Inc. t/a Payless For Beer & Pop Everyday, Beer & Pop Warehouse, Inc., Q.F.A., Inc., and Jet Distributors t/a Beer & Pop Warehouse (collectively, Licensees).

Licensees are holders of importing distributor licenses issued by the Bureau which authorize them to sell malt or brewed beverages for consumption off their premises. Between August 1989 and September 1991, Bureau employees purchased a case of beer from each Licensee that contained products from different manufacturers. The cases were displayed as "mixed" brand cases and were sold at a reduced price so that the

customer is informed that there are different brands within the case. The Bureau issued multiple citations under Section 441(a) of the Liquor Code (Code), Act of April 12, 1951, P.L. 90, *as reenacted*, 47 P.S. 4–441(a), charging the Licensees with selling malt or brewed beverages in containers, not as prepared for the market by the manufacturer at the place of manufacture.

Section 441(a) provides:

No distributor or importing distributor shall purchase, receive or resell any malt or brewed beverages except in the original containers as prepared for the market by the manufacturer at the place of manufacture.

The cases were submitted on stipulated facts to a panel of administrative law judges (ALJ). The stipulated facts for each citation described the purchase of a mixed brand case by a Bureau employee and the display of the cases within the distributor's premises. The parties also stipulated that manufacturers, in most instances, prepare and package their product at the place of manufacture, utilizing mother cartons which typically contain twenty-four cans or bottles of beer, each holding seven fluid ounces or more. Manufacturers also promote their product through built-in handles on the case, advertising on the can, and rebate slips, which must be accompanied by a Universal Product Code (UPC) symbol on the mother carton of the case. Generally, a case includes beer with the same product and date code on each can or bottle, and those codes are used if a bad lot of product compels a recall. The parties also stipulated that approximately seventeen per cent of the cases purchased by the Licensees are sold by manufacturers or wholesalers who either replace or give Licensees credit for damaged cases.[2] Those manufacturers and wholesalers typically fix damaged cases by replacing the damaged original container, and/or mother cartons. Approximately .8% of all cases of malt or brewed beverages purchased by Li-

---

1. This case was reassigned to the opinion writer on November 30, 1994.

2. LCB regulations provide that manufacturers, distributors or importing distributors are not re-

censees become damaged or broken.[3] Cases may be damaged at the brewery, in transit between the brewery and wholesaler, at the wholesaler's premises, in transit between the wholesaler and the distributor or at the Licensees' premises.

A majority of the ALJ panel ruled that Section 441(a) did not prohibit the sale of cases containing brands from more than one manufacturer. The ALJ majority decision interpreted Section 441(a) as intending to preserve the integrity of the beverage itself and not as prohibiting Licensees from mixing cans or bottles in a case or package but admitted "this is an issue where reasonable minds may differ." (ALJ's Majority Decision, p. 8.) The Bureau appealed to the LCB.

The LCB reversed, holding that the sale of mixed brand cases violates Section 441(a) because "original containers as prepared for the market by the manufacturer at the place of manufacture", as used in Section 441(a), means all types of objects used in distribution, including cases, which can be sealed. They also stated that mixed cases result in unworkable pricing, taxing, marketing and quality control rules. Licensees appealed to the trial court and the appeals were consolidated.

■ The trial court reversed the LCB, finding "original containers" to mean only bottles, cans or like objects actually holding the liquid. The trial court held that the definition of "original containers" was stated in the Liquor Code and that definition must be used despite a contrary interpretation by the LCB. The Bureau then filed this appeal.[4]

The only issue in this case is the interpretation of Section 441(a) of the Code. The trial court accepted the argument of the beer distributors that the definition of "original

containers" in Section 102 of the Code, 47 P.S. § 1–102, "shall mean all bottles, casks, kegs or other suitable containers that have been securely capped, sealed or corked by the manufacturer of malt or brewed beverages at the place of manufacture ...", does not include the package or carton in which the cans or bottles are shipped. Therefore, the distributors may break open the cases as shipped by the manufacturer and combine any number of competing brands, sizes and prices in a new package, so long as the package contains at least twenty-four containers holding seven fluid ounces or more, or at least twelve containers holding twenty-four ounces or more.

■ This interpretation ignores as surplusage [5] that part of Section 441(a) which says "original containers *as prepared for the market by the manufacturer at the place of manufacture.*" (Emphasis added.) Licensees argue that the emphasized phrase means "no more than 'as prepared to be sold by the manufacturer for purchase and resale by others.'" But this interpretation still treats the phrase as surplusage. Licensees then suggest (Licensees' Brief, p. 13 n. 13) the phrase was added to emphasize protecting the purity of the beer with sealing and bottling to be done only by the manufacturer. However, the definition of "original container" in Section 102 of the Code already requires all containers to have been securely capped, sealed or corked by the manufacturer at the place of manufacture.

The LCB reasonably interpreted the subject phrase to require marketing the cases of beer as packaged for the market by the manufacturer.

The LCB's interpretation of Section 441(a) is reinforced by the provisions of Section 442(a) of the Code, 47 P.S. § 4–442(a):

---

quired to give any breakage allowance. 40 Pa. Code § 9.97(b).

**3.** In calendar year 1990, Red Sky, for example, discovered approximately 1,409 damaged cases (R.R. 15a).

**4.** Because the cases were presented to the ALJ panel on stipulated facts, our scope of review is to determine if the trial court committed an error

of law or abused its discretion. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Case Beer & Soda Outlet, Inc.,* 156 Pa.Commonwealth Ct. 256, 627 A.2d 226 (1993).

**5.** A court must assume that the legislature intends every word of a statute to have effect. *Southeastern Pennsylvania Transportation Authority v. Weiner,* 56 Pa.Commonwealth Ct. 104, 426 A.2d 191 (1981).

No retail dispenser shall purchase or receive any malt or brewed beverages except in original containers as prepared for the market by the manufacturer at the place of manufacture. The retail dispenser may thereafter break the bulk upon the licensed premises and sell or dispense the same for consumption on or off the premises so licensed. . . .

■ The licensees, distributors and importing distributors, are not given the right to "break the bulk," i.e., to open the case or package and separate the cans or bottles (the bulk) for individual sales on the licensed premises or six-pack sales for consumption off the premises. The absence of the phrase "break the bulk" from Section 441(a) relating to distributors and importing distributors is significant. Where the legislature includes specific language in one section of the statute and excludes it from another, it should not be implied where excluded. *See Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Prekop,* 156 Pa.Commonwealth Ct. 250, 627 A.2d 223 (1993). The business of selling alcoholic beverages is lawful only to the extent permitted by the Code. *Replogle v. Pennsylvania Liquor Control Board,* 514 Pa. 209, 523 A.2d 327 (1987).

■ The Bureau also asserts permitting distributors and importing distributors to indiscriminately mix and match different brands, sizes, ages and quantities in bags, cartons and other containers selected by the distributors will create confusion throughout the malt beverage distribution system, in pricing, taxation, marketing and quality control.

In one of the citations, Officer Ferchak purchased a case of twenty-four twelve ounce cans of beer, paying $7.32 for the case. The case contained fifteen cans of Iron City Beer, five cans of Penns Best Beer, and four cans of Schmidts Beer, and were packaged in a Coors' cardboard carton. The case was rung up as a case of Iron City Beer at a cost of $8.79, minus a discount of $2.00 for being mixed, plus tax, for a total of $7.32. Officer Ferchak noted that fifteen mixed cases of beer were offered by Red Sky at varying prices.

Regulations of the LCB require, inter alia: Sales invoices shall be imprinted or affixed with the name and address of the distributor or importing distributor and shall show the name and address of the recipient of the merchandise, date of sale, number of units, size and type of package, brand name, selling price of the malt or brewed beverages and the net cost to the customer. The deposits charged and refunded for containers, and Commonwealth sales tax, where applicable, shall be shown as separate entries.

40 Pa.Code § 9.106(b).

The sales invoice in this case did not show accurately the type of package, the brand name, or the selling price of the units. The problem would be compounded if the licensee could mix and match indiscriminately the number of units, the size and type of package, the brand name and the selling price.

Other LCB regulations regulate the manner of changing prices of malt or brewed beverages by manufacturers, importing distributors and distributors. They provide that a licensee who reduces the price on a package of a brand of beer may further reduce the price, but a reduction shall remain in effect for at least 180 days except to meet competition; that a licensee who lowers or raises the wholesale price on a package of a brand of beer to one importing distributor or distributor or retail licensee shall lower or raise the price on the package of the brand sold to other importing distributors, distributors, or retail licensees by a like amount. 40 Pa.Code § 11.201(b)(d). In the absence of a standard package for comparison, this regulation would appear to be unworkable.

■ The construction given a statute by the LCB should not be disregarded unless clearly erroneous. *Case Beer and Soda Outlet.* Licensees argue § 441(a) of the Liquor Code requires only that they sell beer in "original containers", i.e., securely sealed or capped cans or bottles physically holding the liquid, and that a cardboard box or mother carton is not an original container. But this argument takes too narrow a view of the law,

and ignores the requirement that not only must the beer be sold in original containers, but "in the original containers as prepared for the market by the manufacturer at the place of manufacture."

Licensees claim the sale of mixed brands is necessary because most manufacturers will not credit distributors for damaged cases, and this cost must be borne by the consumers if Licensees' interpretation of the Code is rejected. Even if this were a significant cost, the remedy is not necessarily to give importing distributors and distributors carte blanche to mix and match different brands, sizes, and quantities of beer indiscriminately. The LCB is given extensive authority to determine the nature, form and capacity of all packages and original containers to be used for containing malt or brewed beverages. 47 P.S. § 2–207(g). And, of course, the Liquor Code may be amended.

## ORDER

NOW, January 12, 1995, the orders of the Court of Common Pleas of Allegheny County entered March 29, 1994, at Nos. S.A. 1572 of 1993, S.A. 1573 of 1993, S.A. 1574 of 1993, S.A. 1575 of 1993, S.A. 1576 of 1993, S.A. 1577 of 1993, S.A. 1578 of 1993, and S.A. 1579 of 1993, are reversed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. I believe the majority opinion erred in holding that if a manufacturer packages beer containers together, in this case, 24 beer cans in a cardboard tray or box, then beer distributors are precluded from replacing damaged cans in a case with intact cans from other damaged cases to make a full case. The definition of "original container" as used in Section 441(a) of the Liquor Code [1] means only that the beer must be in the same container that holds the liquid as sealed by the manufacturer but not in the same overall package. To adopt the majority's view, if a manufacturer places a plastic ring around six kegs, the distributors would

be precluded from selling those kegs other than as a six pack.

As summarized by the majority opinion, beer distributors Red Sky, Inc., titled as Payless For Beer & Pop Everyday, Jet Distributors, titled as Beer & Pop Warehouse, Beer & Pop Warehouse, Inc. and Q.F.A., Inc. (collectively, Licensees) were issued citations by the Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) for selling cases displayed as "mixed" brand cases at a reduced price after informing the customer that there were different brands of beer within the case. The administrative law judges ruled that Section 441(a) did not prohibit the sale of cases containing brands from more than one manufacturer. The decision interpreted Section 441(a) as protecting the integrity of the beverage itself and not as prohibiting Licensees from mixing cans or bottles in a case or package. On appeal, the Pennsylvania Liquor Control Board (LCB) reversed, holding that the sale of mixed brand cases violates Section 441(a) because "original containers", as used in Section 441(a), means all types of objects used in distribution, including cases. The trial court reversed the LCB, finding "original containers" to mean only bottles, cans or like objects actually holding the liquid. The trial court held that the definition of "original containers" was set forth in the Liquor Code and that the definition must be used despite a contrary interpretation by the LCB.

The Bureau contends to this court that the construction given a statute by those charged with its administration is entitled to great weight and cannot be disregarded unless clearly erroneous. It argues that the proper interpretation of Section 441(a) is that mixed brand cases are not "original containers as prepared for the market", as determined by the LCB and as upheld by the majority opinion. However, an interpretation by an agency is not entitled to deference, if, as here, the words of the statute are clear:

When the words of a statute are clear and free from all ambiguity, the letter of it is

---

1. Act of April 12, 1951, P.L. 90, *as reenacted*, 47 P.S. § 4–441(a). Section 441(a) provides:
   No distributor or importing distributor shall purchase, receive or resell any malt or brewed

beverages except in the original containers as prepared for the market by the manufacturer at the place of manufacture.

not to be disregarded under the pretext of pursuing its spirit. Section 1921(b) of the Statutory Construction Act, 1 Pa.C.S. § 1921(b). Only when statutory language is not explicit must an administrative agency's interpretation of the legislature's intent be given deference. Section 1921(c)(8) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(8); *Tool Sales & Service Company, Inc. v. Commonwealth,* 536 Pa. 10, 637 A.2d 607 (1993), *cert. denied, Mistick & Sons v. Pennsylvania,* —— U.S. ——, 115 S.Ct. 85, 130 L.Ed.2d 37 (1994); *Roberts v. Pennsylvania Liquor Control Board,* 146 Pa.Commonwealth Ct. 64, 68, 604 A.2d 1152, 1155 (1992). *See also Pennsylvania Electric Company v. Pennsylvania Public Utility Commission,* 166 Pa.Commonwealth Ct. 413, 648 A.2d 63 (1994).[2]

The issue before this court then is solely whether Section 441(a) restricts distributors from selling in only the cans and bottles as prepared and sealed by the manufacturer or in only the cases exactly as prepared by the manufacturer. If the statutory language is clear, then the court need not defer, but if the language is capable of more than one meaning, then the court must defer to the agency's interpretation. The statute states that no distributors shall sell beer "except in the *original containers* as prepared for the market by the manufacturer at the place of manufacture". Section 441(a) of the Liquor Code, 47 P.S. § 4–441(a) (emphasis added). "Original container" is a defined term in the Liquor Code:

"Original container" shall mean all bottles, casks, kegs or other suitable containers that have been securely capped, sealed or corked by the manufacturer of malt or brewed beverages at the place of manufacture, with the name and address of the manufacturer of the malt or brewed beverages contained or to be contained therein permanently affixed to the bottled, cask, keg or other container, or in the case of a bottle or can, to the cap or cork used in sealing the same or to a label securely affixed to a bottle or can.

Section 102 of the Liquor Code, 47 P.S. § 1–102.

"Original container", as defined in Section 102, is the can or bottle that actually holds the liquid and is sealed or corked by the manufacturer at the place of manufacture. The phrase "as prepared for the market by the manufacturer at the place of manufacture" describes the subject "original container"; because original container is defined as a can, bottle or keg, the phrase emphasizes the statutory requirement that the distributors may sell only in the can, bottle or keg as it was securely capped or sealed by the manufacturer at its place of manufacture. The phrase can not be interpreted independently of its subject to support the argument that "as prepared by the manufacturer" includes not only the bottle or can, but also the case used by the manufacturer. Because original container is clearly defined to mean the cans, bottles or kegs actually holding the beer, it is clear the General Assembly did not prohibit distributors from mixing brands from partially damaged cases to sell a whole case. This court need not defer to the agency's interpretation, regardless of the asserted confusion created in taxation, pricing and marketing.

The Bureau also argues that Section 441(a) must be construed with Section 442(a) of the

---

**2.** Citing *Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 313 A.2d 156 (1973) and *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron,* the United States Supreme Court explained the analysis to be used to determine whether to give deference to an agency's interpretation as follows:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of

the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781.

Liquor Code, citing *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Beer & Pop Warehouse, Inc.*, 145 Pa.Commonwealth Ct. 355, 360, 603 A.2d 284, 287 (1992) (sections of a statute must be construed in reference to the entire statute). Section 442(a) of the Liquor Code, 47 P.S. § 4–442(a) provides, in relevant part:

> No retail dispenser shall purchase or receive any malt or brewed beverages except in *original containers* as prepared for the market by the manufacturer at the place of manufacture. The retail dispenser may thereafter *break the bulk* upon the licensed premises and sell or dispense the same for consumption on or off the premises so licensed ... (emphasis added).

The Bureau argues that Section 442(a) of the Liquor Code establishes that retailers and distributors must both purchase beer in "original containers as prepared for the market by the manufacturer at the place of manufacture" but only retailers then may "break the bulk", that is, it argues, open cases of beer. However, breaking the bulk may refer not to opening cases or packages but opening cans, bottles, and most appropriately, casks or kegs. Having determined that "original containers" explicitly means only sealed bottles, cans, casks or kegs that actually hold the liquid, the statutes read together mean that distributors must purchase and sell beer in the sealed bottles, cans, casks or kegs, but retailers may sell and serve beer in glasses after opening the sealed original containers. Even reading Section 442(a) with Section 441(a), allowing distributors to sell beer only in original containers does not prohibit them from mixing brands from partially damaged cases in order to sell a whole case because they are only required to sell bottles or cans in lots of 12, 24 or more, depending on the size of the bottles or cans.

Because the language of the Section 441(a) is clear that distributors are only prohibited from selling beer not in the cans, bottles or kegs as sealed by the manufacturer at the place of manufacture, the trial court did not err in refusing to rely on the Bureau's contrary interpretation of the statute. If, as warned by the Bureau, injurious consequences of a decision allowing the distributors to mix brands from damaged cases by mixing brands from undamaged cases resulted, the General Assembly is certainly capable of substituting the word "case" for the defined term "original container" in the statute. Consequently, I would affirm the orders of the Court of Common Pleas of Allegheny County and dismiss the citations against the Licensees.