637 A.2d 607

**TOOL SALES & SERVICE CO., INC., Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, Board of Finance and Revenue, Appellees.**

**TOM MISTICK & SONS, INC., Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, Board of Finance and Revenue, Appellees.**

Supreme Court of Pennsylvania.

Submitted Aug. 27, 1993.

Decided Dec. 30, 1993.

Reargument Denied March 21, 1994.

Richard DiSalle, Washington, Charles L. Potter, Jr., Pittsburgh, for appellant.

Kevin A. Moury, Deputy Atty. Gen., for appellees.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

This is an appeal from a decision of the Commonwealth Court affirming the Board of Finance and Revenue. The Board denied the Appellants, Tool Sales & Service Co., Inc. and Tom Mistick and Sons, Inc., a claimed deduction from their average net income in determining the value of their capital stock for the purposes of the Pennsylvania Capital Stock Tax.

The issues presented for our review are (1) whether the term "income per books" as set forth in 72 Pa.S.A. § 7601(a) must be interpreted to include a deduction for federal income taxes not actually paid by an "S" corporation when calculating the corporation's average net income for the purposes of the Pennsylvania Capital Stock Tax; and (2) whether a Department of Revenue (DOR) regulation that allows "C" corporations to deduct federal taxes when calculating income per books while prohibiting "S" corporations from doing so violates the Equal Protection Clause of the United States Constitution and the guarantee of uniformity of taxes found in the Pennsylvania Constitution.

In accordance with the Pennsylvania Rules of Appellate Procedure [1], the parties prepared and submitted a stipulation of facts ("Stipulation"). Based on this stipulation we find the pertinent facts as follows:

(1) Appellants Tool Sales & Service Company, Inc., and Tom Mistick & Sons, Inc. ("Taxpayers") are corporations incorporated in Pennsylvania and conduct all of their business in Pennsylvania.

1. P.R.A.P. 1571(f) provides in its pertinent part: "No record shall be certified to the court by the Board of Finance and Revenue. After the filing of the petition for review the parties shall take appropriate steps to prepare and file a stipulation of such facts as may be agreed to and to identify issues of fact, if any, which remain to be tried."

(2) The Taxpayers elected to be treated as "S" corporations under both federal and Pennsylvania tax law for the 1984 tax year.

(3) In preparing their tax returns for the 1984 tax year, the Taxpayers deducted from their Pennsylvania Capital Stock Tax report an amount equal to the federal taxes they would have paid if they were corporations subject to federal income tax. As "S" corporations, the Taxpayers were not, in fact, subject to any federal income taxes.[2]

(4) Prior to 1984, DOR allowed "S" corporations to deduct from their income per books an amount equal to the federal taxes they would have paid had they been corporations subject to the federal income tax. However, in 1984, DOR issued new regulations prohibiting "S" corporations from making this deduction although DOR allowed "C" corporations to continue making the deduction. This change in regulations by DOR was concurrent with a statutory change in the manner in which corporations were to determine the value of their capital stock for the purposes of the Pennsylvania Capital Stock Tax.[3]

(5) Using this new regulation, DOR disallowed the Taxpayer's claimed deduction, and recalculated their taxes resulting in an increase in their capital stock taxes for the 1984 tax year.

(6) The Taxpayers appealed the DOR's settlement to the Board of Appeals which sustained the settlement. On appeal to the Board of Finance and Revenue, the decision of the Board of Appeals was affirmed. The Commonwealth Court upheld the decision of the Board of Finance and Revenue. *See Tool Sales and Service Co., Inc. v. Commonwealth*, 149 Pa.Commw. 389, 613 A.2d 143 (1992).

This court has jurisdiction over this matter pursuant to 42

2. Under federal tax law "S" corporations are not subject to taxation on their income. Instead, income is distributed to shareholders who report it on their personal returns. *See* 26 U.S.C. § 1361 et seq.

3. See Act of December 22, 1983, No. 89, § 1 (P.L. 360) codified at 72 Pa.S.A. §§ 7601–7602.

Pa.C.S.A. § 723(b)[4] and P.R.A.P. 1101(a)(2)[5] which grant an appeal to this court as a matter of right. Pursuant to P.R.A.P. 1571, which governs review of determinations of the Board of Finance and Revenue, the Appellants filed timely exceptions to the Commonwealth Court's decision thus preserving the issues for our review. *See* P.R.A.P. 1571(i)[6].

Our standard of review in this matter is governed by P.R.A.P. 1571(f). Appeals taken from the Board of Finance and Revenue are *de novo* in nature, with no record being certified by the board. *Ernest Renda Contracting Co., Inc. v. Commonwealth,* 516 Pa. 325, 532 A.2d 416 (1987).

## I. *Taxpayers' Statutory Argument*

### A. *The Pennsylvania Capital Stock Tax*

Under Pennsylvania tax law, domestic corporations pay a tax on the value of their capital stock. *See generally,* 72 Pa.S.A. § 7602 (1990). This is a property tax on the assets of the corporation, not an income tax on the corporation. *See Commonwealth v. Philadelphia Market Street Subway–Elevated Railway Co.,* 408 Pa. 357, 184 A.2d 483 (1962). The value of a corporation's capital stock is determined according to a method set by statute. Prior to 1984, the Pennsylvania

---

**4. § 723. Appeals from Commonwealth Court**

\* \* \* \* \* \*

(b) Board of Finance and Revenue matters.—Any final order of the Commonwealth Court entered in any appeal from a decision of the Board of Finance and Revenue shall be appealable, as of right, under this section.

**5. RULE 1101. APPEALS AS OF RIGHT FROM THE COMMONWEALTH COURT**

(a) **Scope of Rule.** This rule applies to any appeal to the Supreme Court from an order of the Commonwealth Court entered in:

\* \* \* \* \* \*

(2) Any appeal from a decision of the Board of Finance and Revenue.

**6.** 1571(i) provides in its pertinent part: "Any party may file exceptions to an initial determination by the trial court under this rule within 30 days after the entry of the order to which exception is taken. Such timely exceptions shall have the effect ... of an order granting reconsideration of the determination previously entered by the court. Issues not raised by exceptions are waived and cannot be raised on appeal."

Capital Stock Tax was levied on the appraised value of the corporation's capital stock, which was calculated by taking into consideration the following: (i) the average selling price of the stock; (ii) the corporation's earnings; (iii) the dividends declared; and (iv) the stockholder equity. *See* 61 Pa.Code 155.22. The calculation of a corporation's capital stock value was done on a case by case basis considering each of the four elements. *See, e.g., Market Street Subway,* 408 Pa. at 357, 184 A.2d at 485.

The present controversy concerns only the corporation earnings element of the pre–1983 method. DOR regulations defined corporate earnings to be "book income as reported to the shareholders ..." 61 Pa.Code 155.22. Book income was defined by regulation to be "Income as reported in line 1 of schedule M–1 of the Federal 1120 form." *Id.* This line on the 1120 form is titled "net income per books". (Stipulation at para.14.) Under this statutory tax scheme, DOR's practice was to allow both "S" and "C" corporations to deduct federal income taxes from "net income per books" whether or not they were actually liable for the taxes.

For fiscal years beginning in 1984, the General Assembly adopted a fixed formula to determine the value of a corporation's capital stock. Under this new formula, capital stock value is determined by a corporation's average net income and its net worth. *See* 72 Pa.S.A. § 7601(a) (1990).[7] The statute defines average net income as follows:

> The net income or loss of the entity shall be the amount set forth as income per books on the income tax return filed by the entity with the federal government for such taxable year, or if no such return is made as would have been set forth had such a return been made.

*Id.*

7. The statute provides that a corporation's capital stock value is to be calculated as "the product of one-half times the sum of the average net income capitalized at the rate of nine and one-half percent plus seventy-five percent of net worth, from which product shall be subtracted fifty thousand dollars ..." 72 Pa.S.A. § 7601(a) (1990).

Concurrent with this new statutory scheme of calculating capital stock value, DOR adopted a new policy of no longer allowing "S" corporations to deduct hypothetical federal income taxes from income per books. This policy was later formalized as a DOR regulation. *See* 61 Pa.Code 155.26(g) [8].

Taxpayers argue that the term "income per books" as found in 72 Pa.S.A. § 7601 should be interpreted as allowing the taxpayers to deduct from their income per books an amount equal to the federal taxes they hypothetically would have had to pay. DOR argues that this interpretation is contrary to their regulation prohibiting such a deduction. We must now turn to the statutory construction of the term "income per books" to resolve this appeal.

### B. *Statutory Construction*

The Commonwealth Court resolved this issue of statutory interpretation by applying the federal definition of "income per books" to the Pennsylvania statute. *See Tool Sales,* 149 Pa.Commw. at 394, 613 A.2d at 146. The Commonwealth Court did so *sua sponte.*

While this court has not addressed the incorporation of federal tax principles into Pennsylvania tax law, other courts in this Commonwealth which have considered the matter have concluded that federal principles do not apply to our tax law. *See, e.g., Tygart Resources v. Commonwealth,* 134 Pa.Commw. 168, 578 A.2d 86 (1990). Under the facts of the present case, we find it unnecessary to resort to federal tax law to decide the issue at hand. Therefore, we leave the question of the applicability of federal tax principles to Pennsylvania tax law undecided. Instead, we turn to the well established principles of statutory construction adopted by this Commonwealth.

8. 61 Pa.Code 155.26(g) provides "No adjustment to net income or loss may be made for Federal income tax which would have been paid by a corporation electing S corporation treatment under Section 1361 of the IRC (26 U.S.C.A. § 1361) or for Commonwealth Corporate Net Income Tax which would have been paid by a corporation electing Pennsylvania S corporation treatment under article 3 of the TRC (72 P.S. §§ 7301–7361) or for Commonwealth personal income tax paid by the shareholders of the corporation."

 Statutes in this Commonwealth are interpreted according to the Statutory Construction Act found at 1 Pa.C.S.A. §§ 1901–1991 (Supp.1993). Section 1903 of this act provides that "words and phrases shall be construed according to ... their common and approved usage." 1 Pa.C.S.A. § 1903(a) (Supp.1993). Words that have acquired a "peculiar and appropriate meaning" must be construed according to that peculiar and appropriate meaning. *Id.* Taxpayers argue that the phrase "income per books" as found in 72 Pa.S.A. § 7601 has acquired such a "peculiar and appropriate meaning." Prior to the passage of the statute, they argue, DOR maintained a policy of allowing "S" corporations to deduct from their income per books an amount equal to the federal income tax they would have paid had they been liable for federal income taxes. The term "income per books", the taxpayers urge, acquired the peculiar meaning of allowing this deduction because of DOR's voluntary policy. Therefore, the taxpayers assert, the General Assembly intended to include the deduction when they used the term "income per books" in the 1983 Tax Reform Code.[9]

We decline to find that the DOR's voluntary policy of allowing the deduction prior to 1983 created a "peculiar and appropriate" meaning for the purposes of the Statutory Construction Act. The taxpayers concede that the DOR's prior practice was voluntary; no statute compelled the agency to allow the deduction. It has also been stipulated that generally accepted accounting principles do not compel or endorse this deduction. (Stipulation at para. 20.)

Other courts have found a phrase to have a "peculiar or appropriate meaning" for the purposes of statutory construction where the phrase had been defined by the General Assembly in another statute. *See Commonwealth v. Dodge,* 410 Pa.Super. 189, 599 A.2d 668 (1991); *Tyger & Karl Complete Water Systems Co., Inc. v. Commonwealth,* 5 Pa. Commw. 154, 1972 WL 14680 (1972). For example, in *Dodge* the court found that the term "firearm" had acquired a peculiar meaning for the purposes of one act because it was

9. Act of December 23, 1983, No. 89, § 1 (P.L. 360).

specifically defined in another related act. *Dodge,* 599 A.2d at 672.

In the instant case, the General Assembly has not defined the term "income per books" in this or any other act to give it the peculiar meaning that the taxpayers would find in the phrase. Nor do generally accepted accounting principles give the phrase such a peculiar meaning, as they are silent on the matter. The taxpayers' only support for giving this term a "peculiar meaning" for the purposes of statutory construction is DOR's voluntary prior practice. Under the facts of this case, we hold this practice insufficient to give the term "income per books" the peculiar meaning the taxpayers would find.

■ The taxpayers next urge that the term "income per books" is ambiguous, and direct the court to 1 Pa.C.S.A. § 1921 to resolve this ambiguity. Section 1921 states that where a statute is free from ambiguity the letter is not to be disregarded to pursue its spirit. 1 Pa.C.S.A. § 1921(a) (Supp. 1993). However, where the words of a statute are not explicit, a court can consider other enumerated matters. *See* 1 Pa. C.S.A. § 1921(c)(1)–(8) (Supp.1993) [10].

This court agrees with the taxpayers and the Commonwealth Court that, in this instance, the term "income per books" as found in 72 Pa.S.A. § 7601 is ambiguous. The term is undefined in the statute. The only definition for the term is found in regulations addressing the pre–1983 method of calcu-

10. **§ 1921. Legislative Intent Controls**
\* \* \* \* \* \*

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be obtained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

lating the value of capital stock. Here, the term is defined as "income reported in line 1 of schedule M–1 of the Federal 1120 form." 61 Pa.Code 155.22. This definition is unhelpful because for the years involved here there was no such line on the 1120 form filed by "S" corporations. (Stipulation at para. 15.)

As the term "income per books" is ambiguous in this instance, we turn to the Statutory Construction Act to determine the intent of the General Assembly. The Taxpayers urge us to consider 1921(c)(5), which allows the court to consider "former law, if any, including other statutes upon the same or similar subjects." We find this section offers no assistance in construing the meaning of the term "income per books" because there is no former law to consider. The previous statute does not define the term. The previous regulation enforcing that statute is silent on the deduction of hypothetical federal taxes from income per books. The taxpayers argue that the DOR's voluntary practice constitutes "former law" helpful in determining the intent of the General Assembly. However, we find the DOR's voluntary practice to be just that—a voluntary practice which sheds little light on the intent of the General Assembly.

Thus, the cases the taxpayers have cited for the proposition that a statute does not make changes in prior existing law beyond what is expressly declared in their provisions are inapposite. For example, in *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886 (1976), the court held that a criminal statute silent on the issue of merger of conspiracy with the substantive offense did not change the common law rule that conspiracy did not merge with the substantive offense. Here, we are not dealing with a well established common law rule, or a statue, or a regulation evidencing the intent of the General Assembly in enacting section 7601. Rather, we are concerned with a voluntary policy of an administrative agency which, in the opinion of this court, sheds no light on the intent of the General Assembly.

Taxpayers, in their brief, fail to consider 1921(c)(8) which allows the court to use "Legislative and administrative interpretations of the statute," in discerning the intent of the

General Assembly. We hold this section controlling in interpreting the meaning of the phrase "income per books".

It is a well established principle of administrative law that agencies are entitled deference in interpreting the statutes they enforce. *See, e.g., Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 76, 313 A.2d 156, 169 (1973). *Philadelphia Suburban Corp. v. Commonwealth,* 144 Pa.Commw. 410, 601 A.2d 893 (1992), *overruled on other grounds,* 535 Pa. 298, 635 A.2d 116 (1993). Other courts in this Commonwealth have held that an administrative agency's interpretation should be overturned or disregarded only for cogent reasons or where it is "clearly erroneous". *Philadelphia Suburban,* 144 Pa.Commw. at 420, 601 A.2d at 898.; *Commonwealth Liquor Control Board v. Burrell Food Systems,* 97 Pa.Commw. 101, 104, 508 A.2d 1308, 1309 *appeal denied,* 513 Pa. 636, 520 A.2d 1386 (1986). Where the statutory scheme is as technically complex as the Tax Reform Code, "a reviewing court must be even more chary to substitute discretion for the expertise of the administrative agency." *Philadelphia Suburban,* 144 Pa.Commw. at 420, 601 A.2d at 898 (quoting *Smithkline Beckman Corp. v. Commonwealth,* 85 Pa.Commw. 437, 458, 482 A.2d 1344, 1353 (1984) *aff'd per curiam,* 508 Pa. 359, 498 A.2d 374 (1985). The court in *Smithkline* held that "Department of Revenue Regulations interpreting the Tax Reform Code will not be disregarded by this court unless clearly inconsistent with the code," *Smithkline,* 85 Pa.Commw. at 457–58, 482 A.2d at 1354, 1356.

For the purposes of the present situation we adopt these general principles of administrative law as consistently applied by other courts in this Commonwealth to determine the meaning of the phrase "income per books" in 72 Pa.S.A. § 7601. The taxpayers here have the burden of establishing that DOR's regulations are clearly erroneous. *See* 72 Pa.S.A. § 7236 (1990)[11]. We hold that the taxpayers have failed to

11. **§ 7236 Burden of Proof**
 In all cases of petitions for reassessment, review or repeal, the burden of proof shall be upon petitioner or appellant as the case may be.

carry their heavy burden of establishing that the DOR regulation prohibiting their claimed deduction does not comport with the law it is designed to enforce.

Sections 7408 and 7603 of the tax code give DOR the power to "adopt [and] promulgate ... rules and regulations, not inconsistent with" the statutory provisions regarding the capital stock tax. *See* 72 Pa.S.A. § 7408(a) (1990). Nothing in the regulation at issue here promulgated by DOR is contradictory to the statutory scheme of calculating average net income as set forth in 72 Pa.S.A. § 7601. The taxpayers have failed to demonstrate that the regulation is "clearly erroneous." Much of the taxpayers' argument on this point consists of asserting that the regulation differentiating between "S" and "C" corporations is not the most sensible and equitable tax policy. This is insufficient to carry their heavy burden. On this point we will defer to the considerable expertise of the DOR to determine the appropriate tax policy for this Commonwealth within the intent of the General Assembly.

We find the DOR's regulation a reasonable interpretation of the intent of the General Assembly. Concurrent with a major statutory change in the manner in which the value of capital stock was calculated, the DOR reversed its policy of allowing "S" corporations to deduct from income per books an amount equal to the federal taxes they would have paid had they been liable for federal taxes. DOR asserts that the shift from a totality of the circumstances approach of determining capital stock to a fixed formula required this change in policy formalized at 61 Pa.Code 155.22. DOR has consistently applied this policy since the statutory change. (*See* Stipulation at para. 16.) Nothing in this policy is contrary to the statutory scheme of calculating average net income. Furthermore, the General Assembly has had almost a decade to reverse this regulation had it been contrary to the intent of the statute. The failure of the General Assembly to act is evidence that the regulation is not contrary to its intent. For these reasons we defer to DOR's interpretation of the term "income per books."

## II. *Taxpayer's Constitutional Arguments*

 Taxpayers next argue that this statute and the DOR regulation enforcing it are in violation of the Uniformity Clause of the Pennsylvania Constitution [12], and the Equal Protection Clause of the United States Constitution. We do not agree.

 The analysis to be applied in determining the reasonableness of classifications under the Uniformity Clause of the Pennsylvania Constitution and the Equal Protection Clause of the United States Constitution are the same. *Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988). A classification for tax purposes is valid when it is based upon some legitimate distinction between the classes that provides a reasonable and just basis for the different treatment. *Id.* "So long as the classification imposed is based upon some standard capable of reasonable comprehension, be that standard based upon availability to produce revenue or some other legitimate distinction, equal protection of the law has been afforded." *Aldine Apartments v. Commonwealth*, 493 Pa. 480, 487, 426 A.2d 1118, 1122 (1981) (quoting *Commonwealth v. Life Assurance Co. of Pennsylvania*, 419 Pa. 370, 378, 214 A.2d 209, 215 (1965)). The burden is on the taxpayer to demonstrate that a classification made for the purposes of taxation is unreasonable. *Leonard v. Thornberg*, 507 Pa. 317, 489 A.2d 1349 (1985).

In the present situation, the taxpayers assert that 72 Pa. S.A. § 7601 and the regulation enforcing it found at 61 Pa. Code 155.26(g) violate both the Pennsylvania Constitution and the United States Constitution because they allow "C" corporations to deduct from their income per books an amount equal to their federal tax liability, but prohibit "S" corporations from deducting an amount equal to the federal taxes they would pay if they were liable for federal taxes. In short, the taxpayers argue that allowing "C" corporations this deduction from income per books but denying the deduction to "S" corporations violates the guarantee of uniformity taxes re-

12. Article VIII, § 1 of the Pennsylvania Constitution.

quired in the Pennsylvania Constitution and the guarantee of equal protection of the law found in the United States Constitution.

Using the standards set forth above we hold that neither the Pennsylvania Constitution nor the United States Constitution is violated by this method of determining the value of a corporation's capital stock. We find that the distinction between a "C" corporation and an "S" corporation for the purposes of this deduction is a legitimate one. Under both Pennsylvania and federal tax law, "C" corporations are liable for federal income taxes. In a limited number of circumstances, the owners of corporations may voluntarily elect "S" corporation status. *See* 26 U.S.C. § 1362; 72 Pa.S.A. § 7307. The consequence of this election is that the corporation will not pay federal income taxes. Instead, the income will be passed on to the shareholders who will report the income on their personal returns. *See* 26 U.S.C. § 1361 et seq.; 72 Pa.S.A. §§ 7307–7309 (1990).

In short, the amount a "C" corporation deducts from its income per books under this regulation will be, most often, equal to the amount it actually pays in federal income taxes.[13] The amount that the taxpayers wish to deduct and which the regulation prohibits is a hypothetical amount that the "S" corporation will not pay because it is not liable for federal taxes. It is rational to this court that when determining the value of capital stock DOR would allow "C" corporations a deduction for taxes they pay, but prohibit "S" corporations a deduction for hypothetical taxes they do not pay. Once again, much of the taxpayer's argument is that this is not the most sensible or equitable method of taxation. However, the tax-

---

**13.** The Taxpayers and the DOR agree that, in certain circumstances, "C" corporations filing a consolidated return may receive a deduction for federal taxes from income per books even though they do not actually pay federal taxes. (Stipulation at para. 17.) This occurs because of offsetting losses from other members of the consolidated group. *Id.* We agree with DOR that these situations can be distinguished from "S" corporations because "C" corporations filing as part of a consolidated group are subject to federal income taxes while "S" corporations are not.

payer's burden was to demonstrate that this was not a rational method of taxation. They have failed to carry this burden.

The analysis for finding a violation of Article III, § 32 of the Pennsylvania Constitution prohibiting special laws is the same as for the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution. *Leventhal v. City of Philadelphia,* 518 Pa. 233, 542 A.2d 1328 (1988). For the reasons discussed *supra* we find no violation of Article III, § 32 of the Pennsylvania Constitution.

As we find no deprivation of any right under the United States Constitution, we find no violation of 42 U.S.C. § 1983 and no reason to grant attorneys' fees pursuant to 42 U.S.C. § 1988.

For the reasons stated above the opinion of the Commonwealth Court is affirmed.

PAPADAKOS, J., concurs in the result.