**FIRST UNION NATIONAL BANK, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2005.
Decided Oct. 20, 2005.

Lee A. Zoeller, Philadelphia, for petitioner.

Michael A. Roman, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

The Commonwealth of Pennsylvania, pursuant to Pa. R.A.P. 1571(i), filed Exceptions to this Court's decision in *First Union Nat'l Bank v. Commonwealth*, 867 A.2d 711 (Pa.Cmwlth.2005)(*en banc*), arguing that this Court's *en banc* opinion (1) is contrary to precedent, (2) fails to account for both the February 22, 1998 merger of "First Union National Bank" (North Bank) and "First Union National Bank (South)" (South Bank), and the April 28, 1998 merger of the Surviving North Bank with "CoreStates Bank, N.A." (CoreStates), (3) fails to give deference to the Department of Revenue in this "highly technical matter," and (4) erred in not adequately or properly addressing all of its previous arguments.[1]

By way of background, there were three banks relevant to the appeal: North Bank, which possessed continuous tax contacts with Pennsylvania for the entire period relevant to this appeal; CoreStates, which engaged in business in Pennsylvania for the entire period relevant to this appeal; and, South Bank, which was only engaged in business in North Carolina and never Pennsylvania. These banks were all owned by a holding company, First Union

Corporation (the "Holding Company"). Because the name "First Union National Bank (South)" was confusingly similar to "First Union National Bank," the parties agreed to refer to the former as the South Bank and the latter as the North Bank for purposes of the appeal.

In our *en banc* opinion we held that, under Section 701.1 of what is colloquially known as the Bank and Trust Company Shares Tax (Shares Tax),[2] where two banks merge, and one had no pre-merger tax contacts with Pennsylvania, the six years of pre-merger book values of that extraterritorial bank are not to be included in the Shares Tax historical averaging method to determine its "current value" for the computation of its Shares Tax liability. As we articulated in *First Union Nat'l Bank:*

> Section 701.5 of the Shares Tax clearly defines "institution" so as not to include banks with no tax contacts with Pennsylvania. Because South Bank had no pre-merger tax contacts with Pennsylvania, it was not an "institution." Thus, its pre-merger value must be excluded when calculating the tax. In the 1994 amendments to Section 701.1 of the Shares Tax, the General Assembly changed all references in the Shares Tax statute from "banks" to "institutions." The Department's interpretation of the Shares Tax does not distinguish between institutions and banks. Were we to follow that interpretation, and read "institutions" to mean "banks," we would not be giving effect to the statutory amendments. This we cannot do. It is true

---

1. We would clarify that footnote 13 to this Court's *en banc* decision should not be read to impose a requirement on the Commonwealth to preserve/present issues before the Board of Finance and Revenue. Because the Board functions as an adjudicator in Board of Fi-

nance and Review proceedings, it could neither raise nor preserve any issue.

2. Act of March 4, 1971, P.L. 6, *as amended,* added by Section 2 of the Act of December 17, 1982, P.L. 1385, 72 P.S. § 7701.1.

that the General Assembly did not enact a provision specifying the formula for calculating the Shares Tax where an institution merges with a bank that does not meet the definition of an institution. However, even if we were to determine that the statute was not clear because it does not contain this specific formula, we would have to resolve any ambiguity in favor of the taxpayer.

867 A.2d at 716 (footnote and citations omitted).

Commonwealth first argues that this Court ignored well-established precedent upholding the propriety of using an historical averaging method to determine "current value." *Fidelity Bank, N.A. v. Commonwealth,* 165 Pa.Cmwlth. 524, 645 A.2d 452 (1994). It asserts that the Shares Tax, by using the six-year average, does not actually tax a bank's extraterritorial capital, surplus and profits from previous years; rather, it only employs this method "to determine a reliable reflection of the value of shares to be taxed *in the current year ....*" (Commonwealth Br. at 9)(emphasis in original)(quoting *Fidelity Bank* at 460.) It posits that the "clear holding [of *Fidelity Bank* ] is that historical value data can be considered in computing a present value, and that such consideration does not constitute retroactive taxation of historical values." (Commonwealth Reply Br. at 2.) We, however, agree with North Bank that, in this case, no one is challenging the use of the six-year average in computing a present value as required by statute. Instead, this case involves whether the statute requires that the six-year average be used in the mergers that occurred involving North Bank, South Bank and CoreStates. Consequently, the principles established and affirmed in *Fidelity*

*Bank* were not determinative to the issue presented.

Next, Commonwealth asserts that, because North Bank merged with South Bank prior to its merger with CoreStates, its merger with CoreStates was, effectively, the merger of two "institutions" and requires the inclusion in the average value calculation of all six years for all three banks. We, however, agree with North Bank that there is "no authority or logic" to support the argument that the second merger between North Bank and CoreStates (admittedly, a merger of two "institutions") retroactively turns the earlier North Bank/South Bank merger (admittedly, not a merger of two "institutions") into a merger of two institutions.

We believe all of the remaining issues were properly disposed of by the decision of our *en banc* Court, which neither misapplied nor misconstrued the law.[3] Accordingly, the Exceptions to *First Union Nat'l Bank v. Commonwealth* are dismissed.

### ORDER

**NOW,** October 20, 2005, the Exceptions filed by the Commonwealth of Pennsylvania on March 2, 2005, in the above-captioned matter are hereby DISMISSED.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the Majority's decision denying Exceptions filed by the Department of Revenue to this Court's February 2, 2005 Opinion and Order. *See First Union Nat'l Bank v. Commonwealth of Pennsylvania,* 867 A.2d 711 (Pa. Cmwlth.2005). The Court reversed the decision of the Board of Finance and Review (Board), which upheld the Depart-

---

**3.** Furthermore, as our holding is premised on a straightforward application of statutory construction, this is not an instance where we are required to give deference to the Department of Revenue's interpretation of the Shares Tax statute.

ment's recomputation of the Bank and Trust Company Shares Tax (Shares Tax) assessment against North Bank pursuant to Article VII, Sections 701–706 of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7701–7706. The Department's recomputation increased North Bank's Shares Tax to $23,461,115 based on the taxable amount of its shares as of January 1, 1999, reflecting the February 26, 1998 merger of South Bank (which conducted no business in Pennsylvania) into North Bank, and the April 28, 1998 merger between North Bank and CoreStates Bank, leaving North Bank as the sole surviving bank.

The Department audited North Bank's Shares Tax Return, which combined its historical book values with that of CoreStates for the period 1993 through April 28, 1998 but failed to combine South Bank's historical book values for 1993 through February 26, 1998, the date of its merger into North Bank. North Bank filed its petition for refund raising objections to the assessment, which this Court erroneously accepted in reversing the Board (comprised of Pennsylvania Treasurer, Auditor General, Attorney General, Secretary of the Commonwealth, Secretary of Revenue and General Counsel).[1] North Bank contended that South Bank was not an "institution" as the term is defined under Section 701.1 of the Tax Code, added by Section 2 of the Act of December 17, 1982, P.L. 1385, 72 P.S. § 7701.1, because South Bank had no contacts with Pennsylvania prior to the merger. Therefore, according to North Bank, the pre-merger book values of South Bank should not be added to North Bank's book values to compute its Shares Tax.

Section 701.1 of the Tax Code provides that every "institution" must file a report in writing setting forth the full number of shares of its capital stock as of the preceding January 1 and the taxable amount of those shares. The term "institution" is defined as a "bank operating as such and having capital stock which is ... located within this Commonwealth." Section 701.5 of the Tax Code, added by Section 17 of the Act of June 16, 1994, P.L. 279, 72 P.S. § 7701.5. Under the statutory scheme, the taxable value as of January 1 is computed by adding the book value of capital stock for the current and preceding five years and then dividing that sum by six. Section 701.1(a), 72 P.S. § 7701.1(a). Under the "combination provision" of the Tax Code, any combination of two or more institutions into one shall be treated as though the constituent institutions had been a single institution prior to as well as after the combination, and the book values constituent institutions shall be combined. *See* Section 701.1(c)(2), 72 P.S. § 7701.1(c)(2).

North Bank argued in its appeal to this Court that because South Bank was not subject to the Shares Tax the pre-merger six-year average of its book value was incorrectly included in computing North Bank's Shares Tax. I agree with the Department that, because the "combination provision" in Section 701.1 of the Tax Code was silent as to the method of calculating the Shares Tax for an institution that merged with a non-institution bank, the Department properly exercised its authority and expertise by applying the only method provided by the legislature. As of January 1, 1999, the value of North Bank included the combined values of South Bank and North Bank. After the February 1998 merger South Bank no longer exist-

---

1. *See* Section 405 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 115, *and* Section 302 of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. § 732–302.

ed, and all of its assets as of that time were placed within the jurisdiction of this Commonwealth where North Bank conducted business. Although South Bank conducted no business here its value at the time of merger became part of North Bank's value, and, consequently, it too became subject to the Commonwealth's Shares Tax assessment as of January 1999. To avoid any assessment against extraterritorial value, the Department apportioned the taxable value attributable to Pennsylvania based on South Bank's payroll, receipts and deposits in accordance with Section 701.4, added by Section 17 of the Act of June 16, 1994, P.L. 279, 72 P.S. § 7701.4. As the Department's interpretation and application of the relevant Tax Code provisions were not clearly erroneous, the Court should afford deference to the Department's determination.

The Court readily acknowledged in its February 2005 opinion that the legislature had not enacted a provision specifying a formula for the calculation of Shares Tax when an institution bank merges with a bank that does not meet the definition of an institution. Notwithstanding its acknowledgment of that fact, the Majority determined that the ambiguity in the statute must be resolved in favor of the taxpayer, citing, among other cases, the Pennsylvania Supreme Court's decision in *McNeil–PPC, Inc. v. Commonwealth*, 575 Pa. 50, 834 A.2d 515 (2003).

In *McNeil–PPC* the issue was simply whether during an audit the Department must adjust for the taxpayer's underpayment as well as overpayment of taxes, and if it conducts a use tax audit whether it must grant credits for sales tax overpayments. Clearly, under *McNeil–PPC*, where the taxpayer had overpaid taxes to the Department, any ambiguity in tax refund and/or audit scope provisions of the applicable taxing legislation obviously should be construed, as the court did there, in favor of the taxpayer. That, however, is not the issue before this Court. The present case involves complex tax considerations and a determination by the Department based on its expertise to recompute the Shares Tax assessment against an institution that merged in February 1998 with a bank that did no business in Pennsylvania and then that merged the same year with another institution.

The Department was guided by the decision in *Fidelity Bank, N.A. v. Commonwealth*, 165 Pa.Cmwlth. 524, 645 A.2d 452 (1994), where the Court sanctioned the Department's use of the six-year average value as a reliable reflection of the value of a taxpayer's shares in the current tax year. Specifically, the Court reasoned:

> The values of the shares in the preceding five years is part of the calculation *only* to determine a reliable reflection of the value of shares to be taxed in the current year, the shares from previous years are not "retaxed". The purpose of determining a reliable value of property subject to tax is certainly a legitimate purpose and based on the expert testimony this averaging method is a rational means to that purpose. Moreover, the possible taxing schemes discussed in [*McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) ] specifically include retroactively imposing a higher excise tax on taxpayers who have previously paid a tax on those same products in a prior year. Accordingly, we find no due process violation in the retroactivity of the taxing scheme imposed by the 1989 amendments.

*Id.*, 645 A.2d at 460 (citation omitted). Under *Fidelity Bank* the Department may consider historical value data, including

South Bank's historical book value, in computing the current value of North Bank's shares as of January 1, 1999. There is nothing in *Fidelity Bank* or any other authority cited by the Majority that poses an impediment to the approach followed by the Department here.

In *Tool Sales & Service Co., Inc. v. Commonwealth*, 536 Pa. 10, 637 A.2d 607 (1993), the Pennsylvania Supreme Court articulated a settled rule that it applied in that case, which involved the Department's calculation of a corporate taxpayer's capital stock value for tax purposes. The rule applies equally here:

> It is a well established principle of administrative law that agencies are entitled deference in interpreting the statutes they enforce. Other courts in this Commonwealth have held that an administrative agency's interpretation should be overturned or disregarded only for cogent reasons or where it is "clearly erroneous". Where the statutory scheme is as technically complex as the Tax Reform Code, "a reviewing court must be even more chary to substitute discretion for the expertise of the administrative agency." The court in *SmithKline [Beckman Corp. v. Commonwealth*, 85 Pa.Cmwlth. 437, 482 A.2d 1344 (1984), *aff'd per curiam*, 508 Pa. 359, 498 A.2d 374 (1985)]* held that "Department of Revenue Regulations interpreting the Tax Reform Code will not be disregarded by this court unless clearly inconsistent with the code," *SmithKline*, 482 A.2d at 1354, 1356.

*Tool Sales & Service Co.*, 536 Pa. at 22, 637 A.2d at 613 (citations omitted). This Court should adopt the well-settled principles enunciated above, and, accordingly, it should refrain from substituting its discretion for the expertise of the Department in this case. The Department applied a formula for recomputing North Bank's

Shares Tax that was consistent with the holding in *Fidelity Bank* and with Section 701.1 of the Tax Code. I therefore would grant the Department's Exceptions to the Court's decision in *First Union Nat'l Bank v. Commonwealth*.