**CONSOLIDATED RAIL CORPORATION, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

**CONSOLIDATED RAIL CORPORATION, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

**CONSOLIDATED RAIL CORPORATION, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1995.
Decided Jan. 12, 1996.

Ralph G. Wellington, for petitioner.

Matthew W. Tomalis, for respondent.

Before PELLEGRINI and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS,[1] Senior Judge.

Consolidated Rail Corporation (Conrail) appeals from three orders of the Pennsylvania Board of Finance and Revenue (Board) refusing Conrail's petitions for review of the Pennsylvania Department of Revenue's (Department) determination of its capital stock tax (CST) obligations for the taxable years

1. This case was reassigned to the author on December 1, 1995.

January 1 through April 2, 1987, April 3 through April 30, 1987 and May 1, 1987 through April 30, 1988. We affirm.

■ Conrail was incorporated in Pennsylvania on February 10, 1976.[2] Prior to April 2, 1987, eighty-five percent of Conrail's stock was owned by the United States; the remaining fifteen percent of the stock was owned by or on behalf of Conrail's employees. From the date of its incorporation through December 31, 1986, Conrail reported its federal and Pennsylvania state taxes on the basis of calendar years ending on December 31.

On October 21, 1986, Congress enacted the Conrail Privatization Act as part of the Omnibus Budget Reconciliation Act of 1986, Pub.L. 99–509, Title IV, § 4002, 45 U.S.C. §§ 1301–1347 (Act). Under Section 1302 of the Act, its stated purpose was to transfer the United States' eighty-five percent interest in the common stock of Conrail to the private sector in a manner which provided for the long-term viability of the corporation. 45 U.S.C. § 1302. Under Section 1347 of the Act, after the public sale, Conrail was to be treated, for federal tax purposes, as a new corporation that had purchased all of its assets the day after the date of the public sale of its stock. 45 U.S.C. § 1347. The sale of the shares held by the United States under the Act was consummated on April 2, 1987.

Because it was to be treated as a new corporation that had purchased all of its assets as of April 3, 1987, for federal tax purposes Conrail opted to end its taxable year on April 2, 1987. As a result, Conrail filed a federal income tax return for the period January 1 through April 2, 1987. Conrail also filed a Pennsylvania CST report for the same period as required by the Tax Reform Code of 1971 (Tax Reform Code), Act of March 4, 1971, P.L. 6 as amended, 72 P.S. §§ 7101–10004. Conrail's CST liability for this period

is the basis of its appeal to the Court at No. 102 F.R. 1990.

By the unanimous consent of its Board of Directors, Conrail also adopted a new taxable year ending on the last day of the month in which the closing of the stock sale had occurred. Because the closing of the sale occurred on April 2, 1987, Conrail established a new taxable year ending on April 30, 1987. As a result, Conrail filed a federal income tax return for the period of April 3 through April 30, 1987. Conrail also filed the required Pennsylvania CST report for the same period. Conrail appealed its CST liability for this period to this Court at No. 455 F.R. 1993.

Conrail's next taxable year ended on April 30, 1988. As a result, Conrail filed a federal income tax return for the period of May 1, 1987 through April 30, 1988. Conrail also filed the required Pennsylvania CST return for the same period. Conrail appealed its CST liability for this period to this Court at No. 93 F.R. 1994.

Conrail's corporate tax reports for each of the three tax periods were audited by the Department. The Department disputed Conrail's determination of its CST obligation for the three tax periods based on the erroneous calculation of its capital stock value (CSV). In particular, the Department disputed Conrail's calculation of its average net income (ANI) and its calculation of its net worth, both of which comprise its CSV. The Department's calculation of Conrail's ANI and net worth increased its CST obligation for the three tax periods. As a result, Conrail filed petitions for review for each of the three tax periods with the Board. The Board issued three opinions and orders refusing Conrail's petitions for review and affirming the actions taken by the Department. These timely appeals followed.[3]

---

**2.** Conrail and the Department were unable to agree to a stipulation of facts as provided for in Pa.R.A.P. 1571(f). As a result, we issued an order on December 6, 1994, directing the parties to complete the factual record by February 6, 1995. A number of depositions, affidavits and exhibits were filed in response to this order. Although we review the determinations of the Board in our appellate jurisdiction, in such a proceeding we essentially function as a trial

court under Pa.R.A.P. 1571. *McConnell v. Commonwealth*, 503 Pa. 322, 469 A.2d 574 (1983). Thus, the recitation of the facts contained in the body of this opinion is based on the materials submitted by the parties, and constitutes our findings of fact in this case.

**3.** On October 20, 1994, we granted the Board's motion to consolidate the instant appeals.

On appeal, Conrail claims that the Board erred in calculating its CSV by (1) using decimal equivalents in determining its ANI for the three tax periods; and (2) including exempt interest income from United States securities in determining its net worth for the three tax periods.

■ In general, Pennsylvania taxes a corporation based upon its CSV. *Philadelphia Suburban Corp. v. Commonwealth*, 535 Pa. 298, 635 A.2d 116 (1993). For the three tax periods at issue in this case, CSV was defined under Section 601(a) of the Tax Reform Code, 72 P.S. § 7601(a), as:

The amount computed pursuant to the following formula: the product of one-half times the sum of the average net income capitalized at the rate of nine and one-half per cent plus seventy-five per cent of net worth, from which product shall be subtracted one hundred thousand dollars ($100,000), the algebraic equivalent of which is

(.5 x (average net income/.095+ (.75) (net worth)))—$50,000 [4]

■ Conrail first claims that the Board erred in calculating its CSV by using decimal equivalents in determining its ANI for the three relevant tax periods. ANI is defined under Section 601(a) of the Tax Reform Code, in pertinent part, as:

The sum of the net income or loss for each of the current and immediately preceding four years, divided by five. If the entity has not been in existence for a period of five years, the average net income shall be the average net income for the number of years that the entity has actually been in existence.... The net income or loss of the entity for any taxable year shall be the amount set forth as income per books on the income tax return filed by the entity with the Federal Government for such taxable year....

In calculating its ANI for these three tax periods, Conrail interpreted the word "year" in the first sentence of Section 601(a) of the Tax Reform Code to mean the "taxable year" it used in filing its return with the Internal Revenue Service.[5] Accordingly, for the period of January 1, to April 2, 1987, Conrail added its net income for that taxable year with the four preceding full taxable years, and divided the sum by 5. In calculating its ANI for the period of April 3 to April 30, 1987, Conrail added its net income for that taxable year with the net income for the period of January 1 to April 2, 1987 and the three preceding full taxable years, and divided the sum by 5. In calculating its ANI for the period of May 1, 1987 to April 30, 1988, Conrail added its net income for that taxable year with the net income for the periods of January 1 to April 2, 1987 and April 3 to April 30, 1987, with the preceding two full taxable years, and divided the sum by 5.

In the audit, the Department interpreted the word "year" in the first sentence of Section 601(a) of the Tax Reform Code to mean a calendar year or twelve months. Accordingly, the Department calculated Conrail's ANI for the period of January 1 to April 2, 1987, by adding Conrail's net income for that period with the preceding four full calendar years. However, the Department did not divide this sum by 5. Rather, the Department divided this sum by 4.252, the decimal equivalent of four calendar years plus the ninety-two days of the reported tax period.

In calculating Conrail's ANI for the period of April 3 to April 30, 1987, the Department added Conrail's net income for that period

---

4. In 1987, the amount to be subtracted in the equation to determine CSV was changed from $50,000 to $100,000. This amendment was to be applicable to the tax year commencing January 1, 1988, and each tax year thereafter. *See* Section 3 of the Act of July 13, 1987, P.L. 317, 72 P.S. § 7601(a). The most recent amendment to the Tax Reform Code has fixed the amount to be subtracted in the equation to $75,000. *See* Section 13 of the Act of June 16, 1994, P.L. 279, 72 P.S. § 7601(a).

5. Under the Internal Revenue Code, 26 U.S.C. § 443(a)(1) and (2), a taxpayer may file a federal tax return for a period of less than twelve months where, with the approval of the Secretary of the Treasury, the taxpayer changes his annual accounting period, or where the taxpayer is in existence during only part of what would otherwise be his taxable year. Thus, in the case of a return made for a fractional part of a twelve-month year, the term "taxable year" is defined in the Internal Revenue Code as the period for which such return is made. 26 U.S.C. §§ 441(b)(3) and 7701(a)(23).

with the net income for the period of January 1 through April 2, 1987, and the preceding four full calendar years. The Department then divided this sum by 4.329, the decimal equivalent of four calendar years plus the 120 days of the two reported tax periods.

In calculating Conrail's ANI for the period of May 1, 1987 to April 30, 1988, the Department added Conrail's net income for that full year with the net income for the periods of January 1 to April 2, 1987 and April 3 to April 30, 1987, and the preceding 3 full calendar years. The Department divided this sum by 4.329 as well.

The amounts in dispute, are as follows:

| Tax Period | Tax Computed by Conrail | Tax Computed by Department | Amount in Dispute |
|---|---|---|---|
| 01/01/87 — 04/02/87 | $2,078,426 | $2,343,261 | $ 264,835 |
| 04/03/87 — 04/30/87 | $ 612,095 | $ 754,677 | $ 142,582 |
| 05/01/87 — 04/30/88 | $7,497,747 | $9,715,173 | $2,217,426 |

(Exhibit D, Conrail's Brief, p. 9.)

On review, the Board affirmed the Department's use of the decimal equivalents in calculating Conrail's ANI. Conrail now claims that the Board erroneously interpreted the definition of ANI as contained in Section 601(a) of the Tax Reform Code, thereby impermissibly using decimal equivalents to determine its ANI. We disagree.

Section 601(a) of the Tax Reform Code, permits the capital stock tax to be determined in part by averaging the corporation's net income over a five year period, thus, allowing losses in prior years to reduce the tax due in the current year. To apply the formula, both the period and the income for that period must be determined. The period defined by the statute is a year, which is commonly defined as a calendar year, i.e., twelve months. Section 1991 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1991. As a matter of convenience to both the taxpayer and the government, Section 601(a) of the Tax Reform Code provides that the net income of the entity for any taxable year shall be the amount set forth as income on the income tax return filed by the entity with the Federal government for such taxable year. However, such return must also state the actual period of time during which such income was received, which may be less than a year.

Conrail claims that "year" and "taxable year" are synonymous, but the Code does not say that ANI is the sum of the net income for each of the current *taxable* and immediately preceding four *taxable* years, but rather it is the sum for each of the current and immediately preceding four *years*, thus, making clear that "year" and "taxable year" are not necessarily synonymous.

The argument advanced by Conrail in this case, that "year" and "taxable year" are synonymous was rejected, in *Doyle Equipment Co. v. Commonwealth*, 117 Pa.Cmwlth. 38, 542 A.2d 644 (1988), where the petitioner argued that even though it had been incorporated in Pennsylvania in November, 1983, the tax year in which it was incorporated (1983) should be counted as one full year for calculating its average net income, i.e., since it had no income for the 39 days it was in existence in 1983, its 1984 income should be divided by 2, the number of taxable years it had been in existence, rather than 1.10685, the decimal equivalent of the number of years it had actually been in existence.

In rejecting this argument the *Doyle* court said:

> Were this court to accept Petitioner's interpretation of the statutory meaning of 'years' in computing its average net income, a result would occur not intended by the legislature. The General Assembly did not intend to create a loophole through which newly organized corporations may circumvent their tax liability by understating income to reduce or avoid tax.

*Id.* 542 A.2d at 646.

Conrail distinguishes *Doyle* because Section 601(a) of the Tax Reform Code provides that "if the entity has not been in existence

for a period of five years, the average net income shall be the average net income for the number of years that the entity has actually been in existence," and that the petitioner in *Doyle* had actually been in existence in Pennsylvania for 1.10685 years, not two years, whereas Conrail has been in existence in this state since 1976. But, according to Conrail's interpretation of the statute, Doyle had been in existence for two *taxable* years, and should have prevailed in its argument. Thus, Conrail now contends that if a corporation is in existence for less than five years, "year" means a year or twelve months, but if it is in existence for five years or more, "year" means a "taxable year", which may consist of one day or 365 days. Conrail does not suggest any reasonable basis for such disparate and discriminatory treatment of new corporations vis-a-vis old corporations.

In this case Conrail was able to legally adopt three short taxable years in the sixteen month period from January, 1987, through April, 1988, because Congress provided that for federal income tax purposes, Conrail should be treated as a new corporation as of April 3, 1987; but for state tax purposes, Conrail insists that it is not a new corporation, and that it should be allowed to calculate its capital stock tax by using its income for a few months as its net income for an entire year, which would result in a windfall in excess of two and one half million dollars for the three periods in question.

The Board also properly found that the Department's interpretation is supported by its regulation at 61 Pa.Code § 155.26, which says:

(e) In the case of a taxpayer which has not been in existence for a period of 5 calendar years, average net income is the average net income for the number of years that the taxpayer has been in existence. A taxpayer in existence for a part of a year shall be considered to have been in existence for that year based on the number of days in the year that the taxpayer was in existence.

*Example 1.* The taxpayer, incorporated August 1, 1982, reports on a calendar year basis. Its net income for the period August 1 through December 31, 1982 (153 days) was $20,000. Its net income for 1983 was $50,000 and for 1984, $70,000. Average net income for 1984 would be $57,870 ($140,000 ÷ 2 153/365).

*Example 2.* The taxpayer filed on a calendar year basis until December 1980. In 1981 it changed its filing period to a fiscal year ending June 30. In order to do so, it filed a short period report for January 1, through June 30, 1981. Thereafter, taxpayer continued to file on a fiscal year basis. In computing average net income for the period ending June 30, 1985, taxpayer would include its January 1 through June 30, 1981 net income or loss as well as its July 1, 1981 through June 30, 1985 net income or loss and divide the result by 4 181/365.

Conrail does not dispute the validity of Example 1, because the statute, Section 601(a) of the Tax Reform Code, provides for a situation where the entity has not been in existence for a period of five years, and because the result is supported by the *Doyle* case. But Conrail claims that Example 2 is invalid because (except for new corporations) the statute allegedly says that "year" and "taxable year" mean the same thing and, therefore, the regulation is in conflict with the statute.

■ This Court finds no such inconsistency between the regulation and the statute. Understandably, the legislature may not have envisioned the peculiar circumstances created by the "privatization" of Conrail by Congress, but it clearly took into account that a new corporation might have "taxable years" in excess of the number of years it was actually in existence, and knew that a taxable year might be less than twelve months. The regulation of the Department reasonably supplements the statute by providing for a case where a corporation changes its fiscal year and shortens the period of its taxable year. The Department's expertise in this area is entitled to deference in interpreting the statutes they enforce, particularly when such interpretation treats both new and old corporations in a uniform rather than discriminatory manner. *Tool Sales & Service Co. v. Commonwealth,* 536 Pa. 10, 637 A.2d 607 (1993).

■ Conrail next claims that the Board erred in including exempt interest income from United States securities in determining its net worth for the three relevant tax periods. In general, both domestic corporations and foreign corporations doing business in Pennsylvania are subject to an annual tax based on the value of the corporations' capital stock. *Commonwealth v. After Six, Inc.*, 489 Pa. 69, 413 A.2d 1017 (1980). In the case of a domestic corporation, the tax imposed is a capital stock tax and is justified on the constitutional premise that a state may tax the property of its own domestic corporations. *Id.* Thus, Section 602(a) of the Tax Reform Code imposes a flat-rate CST upon a domestic corporation for "[e]ach dollar of the capital stock value as defined in Section 601(a)...." 72 P.S. § 7602(a).

However, under federal law:

Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax....

31 U.S.C. § 3124(a). Thus, assets such as the interest from United States obligations is excluded from the property tax imposed by Pennsylvania on its domestic corporations. *Id.*; Section 1 of the Act of June 22, 1931, P.L. 685, 72 P.S. § 1896; 61 Pa.Code § 155.10(d)(5).

■ In the case of a foreign corporation, the tax imposed under the Tax Reform Code is a franchise tax. *After Six, Inc.* Because a state cannot constitutionally tax property and assets located outside its borders, the franchise tax is a business privilege tax and not a property tax. *Id.*

■ The franchise tax paid by a foreign corporation is designed to measure its business activity within Pennsylvania. *Id.* Thus, Section 602(b) of the Tax Reform Code imposes a flat-rate franchise tax on the "taxable value" of the foreign corporation's CSV which is "determined by employing the relevant apportionment factors set forth in [Section 401]...." 72 P.S. § 7602(b). Under Section 401(3)2.(b)(1) of the Tax Reform Code, all business income of a railroad company is apportioned to Pennsylvania as follows:

[B]y multiplying the income by a fraction, the numerator of which is the taxpayer's total revenue miles within this Commonwealth during the tax period and the denominator of which is the total revenue miles of the taxpayer everywhere during the tax period. For purposes of this paragraph revenue mile shall mean the average receipts derived from the transportation by the taxpayer of persons or property one mile. Where revenue miles are derived from the transportation of both persons and property, the revenue mile fractions attributable to each such class of transportation shall be computed separately, and the average of the two fractions weighted in accordance with the ratio of total receipts from each such class of transportation everywhere to total receipts from both such classes of transportation everywhere, shall be used in apportioning income to this Commonwealth.

72 P.S. § 7401(3)2.(b)(1). Unlike the method of taxation applied to a domestic corporation, there are no statutorily exempt assets in the franchise tax area. *After Six, Inc.*

Foreign corporations may elect to compute and pay their Pennsylvania CST under the single-factor method designed for use by domestic corporations. Section 602(b)(1) of the Tax Reform Code, 72 P.S. § 7602(b)(1); *Gilbert Associates, Inc. v. Commonwealth*, 498 Pa. 514, 447 A.2d 944 (1982). Likewise, domestic corporations may elect to compute their Pennsylvania CST under the franchise tax apportionment methods designed for use by foreign corporations. Section 602(a) of the Tax Reform Code; *After Six, Inc.* However, a domestic corporation electing to apply the method for computing the taxes of a foreign corporation is placed on exactly the same footing as a foreign corporation paying its franchise tax. *Id.*

In calculating its Pennsylvania CST, Conrail excluded interest income it received from United States securities. Conrail contends that the interest income from these securities is exempt from state taxation under federal law. *See* 31 U.S.C. § 3124(a). However, the

federal law provides that this interest income is not exempt from taxation under "[a] non-discriminatory franchise tax or another non-property tax instead of a franchise tax...." 31 U.S.C. § 3124(a)(1). By electing to compute its tax as a foreign corporation, Conrail placed itself on the same footing as a foreign corporation paying its franchise tax. *After Six, Inc.* Thus, the interest income is not exempt in calculating the CST imposed on Conrail. 31 U.S.C. § 3124(a)(1). As a result, the Board did not err in including this interest income in determining Conrail's net worth for the three tax periods.

The orders of the Board are, therefore, affirmed.

### ORDER

NOW, January 12, 1996, the orders of the Board of Finance and Revenue, dated March 27, 1990, July 28, 1993, and March 1, 1994, at Nos. R12,626, R12,627, and 18641, are affirmed.

Unless exceptions are filed within thirty (30) days under the provisions of Pa.R.A.P. 1571(i), the prothonotary is directed to enter this order as a final order.

KELLEY, Judge, dissenting.

I respectfully dissent.

I agree with the majority's conclusion that the Pennsylvania Board of Finance and Revenue (board) and the Pennsylvania Department of Revenue (department) did not err in including interest income from United States securities in determining Consolidated Rail Corporation's (Conrail) net worth for the three relevant tax periods. However, because I do not believe that the Tax Reform Code (Tax Code)[1] authorizes the use of decimal equivalents in determining the average net income (ANI) of a corporation that has been in existence for more than five years, I must disagree with the majority's conclusion to the contrary. Because I believe that the board erred in affirming the department's use of decimal equivalents in determining

Conrail's ANI for the three relevant tax periods, I respectfully dissent.

As the majority notes, ANI is defined under section 601(a) of the Tax Code, in pertinent part, as follows:

The sum of the net income or loss for each of the current and immediately preceding four years, divided by five. If the entity has not been in existence for a period of five years, the average net income shall be the average net income for the number of years that the entity has actually been in existence ... The net income or loss of the entity for any taxable year shall be the amount set forth as income per books on the income tax return filed by the entity with the Federal Government for such taxable year....

72 P.S. § 7601(a).

In general, statutes in Pennsylvania are interpreted according to the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991. *Tool Sales & Service Co., Inc. v. Commonwealth,* 536 Pa. 10, 637 A.2d 607 (1993). When interpreting a statute, this court must ascertain and effectuate the intent of the General Assembly, and give full effect to each provision of the statute where possible. *Doyle Equipment Co. v. Commonwealth,* 117 Pa.Cmwlth. 38, 542 A.2d 644 (1988).

Words and phrases used in legislation are to be construed according to their common meaning and accepted usage. *Id.* Where the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. *Id.* The General Assembly is presumed not to have intended a result which is absurd or unreasonable. *Id.*

Under the clear wording of section 601(a), to calculate its ANI a corporation must add "[t]he net income or loss for each of the current and immediately preceding four years", and then divide this sum by five. In making this calculation, a corporation is to use the net income or loss for a taxable year as set forth as income per books on its federal income tax return. 72 P.S. § 7601(a).

1. Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004.

By its express terms, the statute incorporates the use of figures reported for a taxable year on a corporation's federal tax return. Under the Internal Revenue Code, the taxable year for a taxpayer encompasses the period for which a return is made if it is made for a fractional part of a year. 26 U.S.C. §§ 441(b)(3), 7701(a)(23).

Under a plain reading of the definition of ANI found in section 601(a) of the Tax Code, it is clear that to calculate the ANI for a corporation that has been in existence for more than five years, the corporation must add the net income or loss for the current and preceding four *taxable* years, as reported on a federal tax return, and then divide this sum by five. 72 P.S. § 7601(a). For a corporation that has been in existence for more than five years, there is absolutely *no* language in section 601(a) which provides for the adjustment of either the figures reported on its federal tax return or the divisor of five in order to approximate its ANI over a five *calendar* year period. Accordingly, I believe that the department and the board erred in concluding that, under section 601(a), ANI is the average of net income over a five calendar year period, and in using decimal equivalents to calculate Conrail's ANI for each of the three relevant tax periods.

The board contends that the department's use of decimal equivalents in calculating Conrail's ANI is supported by the regulation found at 61 Pa.Code § 155.26. As noted by the majority, this regulation reads, in pertinent part, as follows:

(e) In the case of a taxpayer which has not been in existence for a period of 5 calendar years, average net income is the average net income for the number of years that the taxpayer has been in existence. A taxpayer in existence for a part of a year shall be considered to have been in existence for that year based on the number of days in the year that the taxpayer was in existence.

*Example 1.* The taxpayer, incorporated August 1, 1982, reports on a calendar year basis. Its net income for the period August 1 through December 31, 1982 (153 days) was $20,000. Its net income for 1983 was $50,000 and for 1984, $70,000. Average net income for 1984 would be $57,870 ($140,000 [divided by] 2 153/365).

*Example 2.* The taxpayer filed on a calendar year basis until December 1980. In 1981 it changed its filing period to a fiscal year ending June 30. In order to do so, it filed a short period report for January 1 through June 30, 1981. Thereafter, taxpayer continued to file on a fiscal year basis. In computing average net income for the period ending June 30, 1985, taxpayer would include its January 1 through June 30, 1981 net income or loss as well as its July 1, 1981 through June 30, 1985 net income or loss and divide the result by 4 181/365.

61 Pa.Code § 155.26(e).

It is true that the legislative and administrative interpretation of the statute may be used in discerning the intent of the General Assembly. 1 Pa.C.S. § 1921(c)(8); *Tool Sales & Service Co., Inc.* In addition, it is a well settled principle of administrative law that agencies are entitled deference in interpreting the statutes they enforce. *Id.* In a case such as this, where the subject matter is within the agency's area of expertise and beyond general judicial competence, we give great weight to the agency's interpretation. *Philadelphia Suburban Corp.* Thus, where the statutory scheme is as technically complex as the Tax Code, this court must be even more chary to substitute its discretion for the expertise of the administrative agency. *Tool Sales & Service Co., Inc.*

However, the validity of an agency's interpretative rule depends upon the willingness of the reviewing court to find that it tracks the meaning of the statute it interprets. *Philadelphia Suburban Corp.* The department's regulations interpreting the Tax Code will not be disregarded by this court unless they are clearly inconsistent with the Code. *Id.*

The statutory definition of ANI provides that "[i]f an entity has not been in existence for a period of five years, the average net income shall be the average net income for the number of years that the entity has actually been in existence." The regulation found at 61 Pa.Code § 155.26(e) makes the

same provision for calculating the ANI of entities that have been in existence for less than five years. In *Doyle Equipment Co.,* we specifically authorized the use of decimal equivalents in calculating the ANI of entities that have been in existence for less than five years. *Doyle Equipment Co.,* 542 A.2d at 646.

However, there is absolutely *no* statutory authority for the use of decimal equivalents in calculating the ANI of an entity that has been in existence for more than five years, whether or not the entity has changed its tax filing period. Thus, the regulation found at 61 Pa.Code § 155.26, as applied by the department and the board in this case, is clearly inconsistent with the Tax Code. *Philadelphia Suburban Corp.* As a result, I believe the majority erroneously affirms the board by relying on this regulation to support the use of a decimal equivalent in determining Conrail's ANI for the three relevant tax periods.