# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Louis Bowman, | : | |
| Appellant | : | |
| | : | No. 1204 C.D. 2023 |
| v. | : | |
| | : | Submitted: September 10, 2025 |
| Kathy J. Brittain | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MATTHEW S. WOLF, Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                    **FILED:  October 23, 2025**

Louis Bowman (Bowman), proceeding *pro se*, appeals from the order of the Court of Common Pleas of Schuylkill County (trial court) entered August 30, 2023, which sustained a preliminary objection filed by Superintendent Kathy J. Brittain (Brittain) and dismissed Bowman's Petition for Writ of Mandamus (petition) with prejudice.  After careful review, we affirm.

## I. BACKGROUND[1]

Bowman is an inmate at the State Correctional Institution at Frackville (SCI-Frackville).  Bowman avers that, while serving time at SCI-Mercer, he was

---

[1] We derive this background from the trial court's opinion, which accurately states Bowman's averments and the procedural history.  *See* Trial Ct. Op., 12/22/23.

permitted private conference calls with his psychiatrists, Dr. Lindsey Wilner and Dr. Shannon Edwards. However, following his transfer to SCI-Frackville on December 20, 2021, prison officials denied these private calls. On October 3, 2022, seeking to reinstate the calls, Bowman petitioned the trial court for a writ of mandamus to compel Brittain to allow his mental healthcare treatment to be "conducted through private conference calls." *See* Bowman's Pet. at 6-8. Failure to provide these calls, he alleges, violates the Mental Health Procedures Act[2] (MHPA), the Fourteenth Amendment of the United States Constitution,[3] and Article I, Section 1 of the Pennsylvania Constitution.[4]

In his pleadings, Bowman first cites the express purpose of the MHPA, which "establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons." *See* 50 P.S. § 7103; Bowman's Pet. at 4. He then references the MHPA's confidentiality provision, 50 P.S. § 7111,[5] and *Emerich v. Philadelphia Center for Human Development, Inc.*, 720 A.2d 1032 (Pa. 1998), to demonstrate that the "law makes no distinction between" attorney-client confidentiality and psychiatrist or psychologist-patient confidentiality. *See* Bowman's Pet. at 5-8. Relying on this parallel, Bowman contends that he is entitled to access the private

---

[2] Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. §§ 7101-7503. The MHPA's section numbers are distinct from "the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law." *Herold v. Univ. of Pittsburgh*, 329 A.3d 1159, 1166 n.1 (Pa. 2025). For clarity, we may refer to provisions of the MHPA "only by their Purdon's citation." *Id.*

[3] U.S. Const. amend. XIV, § 1.

[4] Pa. Const. art. I, § 1.

[5] 50 P.S. § 7111 specifically relates to the confidentiality of records concerning persons in voluntary or involuntary treatment connected to the prison. Bowman's reliance on this authority is misplaced, as his petition reflects a desire to have access to the private conference call booths for his mental health treatment with third-party providers.

phone booths typically reserved for attorney-client communications to ensure the confidentiality of his mental health treatment, which, according to Bowman, is a right guaranteed to him under the MHPA. *See id.*

Bowman also asserts that no adequate or appropriate alternative remedies are available. Specifically, he pleads that standard visitation methods, such as in-person visitation, tele-visitation, or general phone calls, "would require [Bowman's mental healthcare provider] to violate the MHPA to conduct any therapeutic sessions" through those means. *Id.* at 5. Additionally, Bowman avers that the prison's staffing structure makes private mental healthcare treatment sessions impossible, noting that there is only one mental healthcare professional per general population unit, who shares office space with the unit manager and is supervised by a single licensed professional for the entire facility. *See id.* at 6-8.

On January 9, 2023, Brittain removed the case from the trial court to the United States District Court for the Middle District of Pennsylvania, asserting that the court had jurisdiction over Bowman's federal claims under U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Bowman's state law claims pursuant to 28 U.S.C. § 1367. However, on June 28, 2023, the district court remanded the case back to the trial court, indicating that it lacked jurisdiction to issue a writ of mandamus compelling state officials' actions.

Subsequently, Brittain filed a preliminary objection in the nature of a demurrer pursuant to Pa.R.Civ.P. 1028(a)(4), asserting that Bowman failed to state a claim for mandamus, as she has the discretion to deny Bowman's request for private calls. The trial court sustained the preliminary objection and dismissed the petition with prejudice, reasoning that prison officials have discretion to set and

3

enforce rules governing prisoner healthcare, and nothing in the law grants inmates the right to choose the manner in which their healthcare is provided.[6]

Bowman timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The trial court issued a responsive opinion.

## II. ISSUES

Bowman presents a single issue for our consideration. *See* Bowman's Br. at 4. He contends that the trial court erred in sustaining Brittain's preliminary objection, thereby violating his rights under the MHPA. *See id.* at 8. In response, Brittain maintains that Bowman has failed to state a claim for mandamus, as seeking to compel discretionary action is outside the scope of mandamus relief. *See* Brittain's Br. at 3, 7.

## III. DISCUSSION[7]

Bowman has attempted to set forth a claim for mandamus, alleging that: (1) the MHPA guarantees a legally enforceable right to confidential treatment; (2) Brittain has a duty to uphold that right; and (3) absent the requested private conference calls, no adequate remedy exists. *See generally* Bowman's Pet. In support, Bowman first cites the express purpose of the MHPA. *See* 50 P.S. § 7103; Bowman's Br. at 8. He further relies on 42 Pa.C.S. § 5944, which affords the same protections to communications between a patient and psychiatrist or psychologist as those granted to attorney-client communications, as well as *Emerich*, 720 A.2d 1032, to illustrate that because the law equates these privileges, he is entitled to the same

---

[6] We note that the trial court states in its opinion that it "lacked jurisdiction" to compel prison officials to act. This language does not properly articulate the nature of the trial court's order. To be clear, the court sustained the preliminary objection and dismissed Bowman's petition with prejudice. *See* Trial Ct. Op., 12/22/23; Trial Ct. order, entered 8/30/23.

[7] Our standard of review is *de novo*, and our scope of review is plenary. *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020). A demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law. *Id.*

private setting for mental health treatment as he would be for legal counsel. Next, Bowman turns to the rights and remedies provision of the MHPA,[8] specifically underlining "mandamus" in his recitation of the provision as an available remedy to protect the rights granted under the MHPA. *See* Bowman's Br. at 8; 50 P.S. § 7113. Lastly, Bowman details how "alternatives suggested by [Brittain] do not provide a workable remedy" for several reasons. *See* Bowman's Br. at 11. First, Bowman reasserts that there is only one mental healthcare professional per general population unit, sharing an office with the unit manager and operating under a single licensed supervisor for the entire prison, making "opportunities for a private session or meeting [ ] virtually non-existent." *See id.* at 9-10. Additionally, Bowman further posits that engaging with his providers through standard visitation methods defeats "any notion of privacy." *See id.* at 11. Bowman expands upon the averments outlined in his pleadings, explaining that normal visitation takes place within earshot of other individuals, Zoom-based tele-visitation is "livestreamed" and "recorded," and standard telephone calls, which are also recorded, occur at a distance of only "15-18 inch[es]" apart from others, which he likens to "treatment by megaphone." *See id.* at 11.

---

[8] Specifically, 50 P.S. § 7113 provides:

> Every person who is in treatment shall be entitled to all other rights now or hereafter provided under this law of this Commonwealth, in addition to any rights provided for in this act. Actions requesting damages, declaratory judgment, injunction, <u>mandamus</u>, writs of prohibition, habeas corpus, including challenges to the legality of detention or degree of restraint, and any other remedies or relief granted by law may be maintained in order to protect and effectuate the rights granted under this act.

50 P.S. § 7113 (emphasis mirrors that used by Bowman in his citation of this provision in his brief). *See* Bowman's Br. at 12.

When ruling on preliminary objections in the nature of a demurrer, this Court must "accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts." *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020) (cleaned up). We will consider not only the facts pleaded in the complaint, but also any documents or exhibits attached to it. *Lawrence v. Dep't of Corr.*, 941 A.2d 70, 72 (Pa. Cmwlth. 2007). It is not necessary to accept as true any averments in the complaint that conflict with exhibits attached to it. *Id.* A preliminary objection in the nature of a demurrer should be sustained only when there is no doubt that the plaintiff has failed to state a claim for which relief may be granted. *See id.; Kretchmar v. Commonwealth*, 831 A.2d 793 (Pa. Cmwlth. 2003).

The common law writ of mandamus is an extraordinary remedy that is designed to compel a public official to perform a ministerial act or mandatory duty. *Baron v. Commonwealth Dep't of Hum. Servs.*, 169 A.3d 1268, 1272 (Pa. Cmwlth. 2017) (*en banc*), *aff'd*, 194 A.3d 563 (Pa. 2018); *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014); *Hoyt v. Dep't of Corr.*, 79 A.3d 741, 742 (Pa. Cmwlth. 2013). Accordingly, the purpose of a writ of mandamus is not to establish legal rights, but rather, its purpose is to "enforce those rights which have already been established." *Weaver v. Dep't of Corr.*, 720 A.2d 178, 182 n.9 (Pa. Cmwlth. 1998); *see also Allen*, 103 A.3d at 369; *Maute v. Frank*, 670 A.2d 737, 739 (Pa. Cmwlth. 1996). Therefore, in order to state a claim for mandamus, a plaintiff must establish the following elements: (1) a clear legal right to relief in the plaintiff; (2) a corresponding duty in the respondent; and (3) the lack of any other adequate and appropriate remedy. *Baron*, 169 A.3d 1272. Because mandamus is used to compel

6

performance of a ministerial duty, it will not be granted in doubtful cases. *Lawrence*, 941 A.2d at 72.

First, we observe that Bowman's reliance on the MHPA is misplaced because it provides rights and procedures related to involuntary and voluntary treatment and examination "affecting those charged with crime or under sentence." *See* MHPA (long title); *see also* the MHPA *and* §§ 7103, 7113. Here, however, Bowman seeks accommodations for treatment involving his private, third-party healthcare providers, a treatment relationship that appears distinct from voluntary and involuntary treatment and examination governed by the MHPA. Furthermore, Section 5944 of Title 42 falls under the chapter on depositions and witnesses, pertaining to judicial proceedings, rather than the conditions of mental health treatment within correctional facilities. The statute does not support Bowman's claimed entitlement to private conference calls with his personal mental healthcare providers at SCI-Frackville.

*Emerich* likewise does not support Bowman's claimed entitlement to private conference calls with his personal mental healthcare providers, nor does it ensure a duty for Brittain to facilitate these sessions. 720 A.2d at 1042. While the *Emerich* Court recognized parallels between psychiatrist or psychologist-patient confidentiality and attorney-client privilege, it expressly limited that protection with exceptions, such as threats of imminent harm to third parties. *See id.* Proceeding from this premise, Bowman asserts that "[a]s the sole licensed mental health professional is responsible for the entire population, (approximately 900 inmates) opportunities for a private session or meeting with him [are] virtually nonexistent." Bowman's Br. at 10. Yet, Bowman does not aver that he was denied mental health treatment entirely. Inmates are not entitled to private sessions, and prison authorities

7

are not required to provide a specific manner of care to inmates, so long as treatment is provided generally. *See Maute*, 670 A.2d 729; 37 Pa. Code § 93.12(a). The decision to provide private conference calls lies within the discretion of Brittain. *Id.*

Moreover, 37 Pa. Code § 93.12 governs policies in administering medical services in prisons, including mental health treatment. *See* 37 Pa. Code § 93.12(a) ("Every institution will establish procedures to permit inmates to have access to health care professionals, prescribed treatment for serious medical needs, appropriate nutrition, exercise and personal hygiene items."). Generally, the policies of the Department of Corrections (DOC) do not create legal rights enforceable through mandamus. *See Shore v. Dep't of Corr.*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017). DOC is charged with ensuring a prisoner's medical needs are met, and the protections under the federal and state constitutions are available to them. *See Kretchmar*, 831 A.2d at 797. However, "prison officials are given a wide range of discretion in promulgation and enforcement of rules to govern the prison community in order to maintain security, order, and discipline." *Maute*, 670 A.2d at 739.

Therefore, we agree with the trial court that DOC's medical policy does not create rights enforceable through mandamus. *See* Trial Ct. Op. at 2-5; *Shore*, 168 A.3d at 386. Although inmates are entitled to general mental healthcare treatment at SCI-Frackville, Bowman has not established a clear legal right under the law in which he is entitled to the specific kind of treatment he seeks, *i.e.*, private conference calls with his personal psychiatrists. *See Maute*, 670 A.2d at 729; 37 Pa. Code § 93.12(a). Brittain holds discretion over healthcare "delivery," and the law does not guarantee Bowman the right to select his provider or mode of treatment. *Maute*, 670 A.2d 729; 37 Pa. Code § 93.12(a).

8

Accordingly, Bowman cannot establish that he has a clear right to private conference calls with his personal mental healthcare providers, nor can he demonstrate that Brittain has a corresponding duty to provide mental healthcare treatment sessions in the form of private conference calls. *Baron*, 169 A.3d at 1272. Thus, Bowman is not entitled to mandamus relief. *Id.*; *Weaver*, 720 A.2d at 182 n.9.

For these reasons, we affirm.

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Louis Bowman,                          :
            Appellant       :
                            :    No.  1204 C.D. 2023
           v.              :
                            :
Kathy J. Brittain                      :

## O R D E R

AND NOW, this 23rd day of October, 2025, the trial court's order, entered August 30, 2023, is AFFIRMED.

**LORI A. DUMAS, Judge**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Louis Bowman,                              :
                         Appellant        :
                                          :
            v.                            :    No. 1204 C.D. 2023
                                          :    Submitted: September 10, 2025
Kathy J. Brittain                         :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY PRESIDENT JUDGE COHN JUBELIRER          FILED: October 23, 2025


        The United States Supreme Court has long held that "a pro se complaint . . . [is held] to **less stringent standards** than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (emphasis added). Our Commonwealth's highest court likewise directs that pro se filings be given a "fair reading" and are held "to less stringent standards than formal pleadings drafted by lawyers." *Commonwealth ex rel. Saunders v. Creamer*, 345 A.2d 702, 706 & n.5 (Pa. 1975) (quoting *Haines*, 404 U.S. at 520). This Court has, of course, followed suit, stating that "[i]f a **fair reading** of [a pro se] complaint shows that the complainant has pleaded facts that **may entitle him to relief**, the preliminary objections will be overruled." *Danysh v. Dep't of Corr.*, 845 A.2d 260, 263 (Pa.

Cmwlth. 2004) (emphasis added). "[O]nly in cases that are clear and free from doubt and only where it appears with certainty that the law permits **no recovery**" will preliminary objections be sustained. *Id.* (emphasis added).

The majority runs afoul of these well-settled legal principles by not giving Louis Bowman's pro se complaint (Complaint) a fair reading and by not holding it to less stringent standards. Instead, the majority reads the Complaint strictly and narrowly, unnecessarily so. Ultimately, the majority glosses over the substance of the Complaint, which seeks relief based on Bowman's allegations that the State Correctional Institution at Frackville (SCI-Frackville), where Bowman is an inmate and of which Kathy J. Brittain is Superintendent, is providing inadequate mental health treatment to its inmates in violation of, *inter alia*, the Mental Health Procedures Act (MHPA).[1] Because I believe that under a "fair reading" of Bowman's Complaint it is not "clear and free from doubt" that "it appears with certainty that the law permits no recovery" on the allegations contained therein, I would reverse the Order of the Twenty-First Judicial District, Schuylkill County Branch (trial court), that sustained Brittain's preliminary objection and dismissed Bowman's Complaint with prejudice. *Danysh*, 845 A.2d at 263. Accordingly, I must dissent from the majority.

The relevant facts are as follows. Bowman avers that in 2020, while serving time at SCI-Mercer, his family hired "psychiatrists"[2] (providers) to provide him mental health treatment. Staff at SCI-Mercer facilitated his treatment with these providers by allowing private conference calls to be scheduled between the providers

---

[1] Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. §§ 7101-7503.

[2] Bowman's Complaint and filings refer to these individuals as psychiatrists. An exhibit to the Complaint identifies one with the post-nominal letters "PSYD," indicating that she is a Doctor of Psychology.

and Bowman for "almost two years." (Compl. at 3.[3]) Several "Notice[s] of Inmate Telephone Conference Call" reflect Bowman's name, the date and time of the call, that the call was with "Lindsey Wilner, PSYD" or "Dr. Shannon Edwards," and that the notice was sent to numerous individuals at SCI-Mercer, including its Superintendent, Assistant Superintendent, Security Captain, and Bowman's counselor. (Reproduced Record (R.R.) at 6-15.[4])

In December 2021, Bowman was transferred from SCI-Mercer to SCI-Frackville. At that time, Bowman spoke to the unit manager at SCI-Frackville and the prison psychologist, requesting continuation of his treatment with the providers. The unit manager denied his request. Bowman's family hired an attorney to contact Brittain to request his continued treatment by the providers, which she refused, stating that the private conference calls at SCI-Mercer were approved in error by clerical staff, and would not have been allowed by administration if it "knew the extent of the calls." (Compl., Ex. C, Apr. 26, 2022 Letter.) The letter elaborated that "[t]he attorney phone booths were set up for privileged calls between attorney[s] [and] clients and the courts" and were not intended for the requested use. (*Id.*) Brittain indicated that inmates could have "access via phone or video assessments with private therapists or physicians . . . through court ordered subpoenas." (*Id.*) Brittain offered in her letter that Bowman and his providers are "not restricted from being on his visiting list (video or face-to-face visits) or phone lists"; that Department of Corrections (Department) policy "does not recognize 'private therapist' as a privileged visitor in regard[] to calls or visits"; and that the

---

[3] After 13 numbered averments, Bowman's Complaint continues in non-numbered paragraphs at pages 3 onward.

[4] Bowman has not numbered the pages of his reproduced record, and, therefore, we use the electronic page number for ease of reference.

Department "has licensed [p]sychiatry and psychology staff available for counseling for inmates." (*Id.*)

Guided by Brittain's letter, Bowman filed the present action, which he styled as a "petition for writ of mandamus," with the trial court. Therein, he sets forth the above facts, as well as the MHPA's requirements for the provision of adequate, confidential mental health treatment for all. (Compl. at 4-6.) Bowman avers that Brittain is not aiding or facilitating Bowman's recovery, as required by the MHPA, by denying the access that officials at SCI-Mercer provided and by offering alternatives that would violate the MHPA in a variety of ways. (*Id.* at 5-6.) According to Bowman, contrary to Brittain's position, the psychologist-patient privilege is recognized by law, as set forth in *Emerich v. Philadelphia Center for Human Development, Inc.*, 720 A.2d 1032, 1042 n.9 (Pa. 1998) (quoting Section 5944 of the Judicial Code, 42 Pa.C.S. § 5944) ("The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.").

Bowman alleges that the mental health treatment offered by SCI-Frackville is inadequate, observing that SCI-Frackville has only **1 licensed psychiatrist** for the entire prison's population and 4 unlicensed individuals, 1 per housing unit, to provide mental health services for approximately **1,200 inmates**. (Compl. at 7.) The lack of sufficient number of licensed or trained staff can give rise to a violation of the Eighth Amendment to the United States Constitution.[5] (*Id.* (citing *King v. Frank*, 328 F. Supp. 2d 940, 947-48 (W.D. Wis. 2004)).) Bowman additionally avers that the treatment provided runs afoul of the MHPA's confidentiality requirements, as treatment sessions are not private and are performed by employees of the

---

[5] The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

Department, making those employees beholden to the Department and likely to disclose what occurs in those sessions, which had happened in the past. (*Id.* at 7-8.)

In affirming the trial court's dismissal of the Complaint, the majority fails to give the above averments a fair reading and reads the pro se Complaint strictly in contravention of standards established by the United States Supreme Court, the Pennsylvania Supreme Court, and this very Court. The majority relies on Bowman's inartful titling of the Complaint and suggestion of a particular form of relief to resolve the alleged violation of the MHPA by Brittain and SCI-Frackville, mandamus, to conclude that the Court may consider this matter only as a mandamus action. However, the Court should look beyond the title given to a complaint or petition, particularly where the author is pro se, and examine the complaint as a whole to determine whether to sustain preliminary objections. *Taylor v. Pa. State Police*, 132 A.3d 590, 598-99 (Pa. Cmwlth. 2016).

When the substance of this Complaint is examined in its entirety, it is apparent that, notwithstanding Bowman's inaccurate use of a term of art to describe the form of action, he is challenging the adequacy of the mental health care available to him due to (1) a lack of sufficient licensed mental health care providers at SCI-Frackville, and (2) the lack of confidentiality during treatment, with prison staff and other prisoners present during treatment. He is also challenging the alternatives suggested by Brittain as being inadequate and a violation of the MHPA.

Section 102 of the MHPA provides that "[i]t is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of [the MHPA] to establish procedures whereby this policy can be effected." 50 P.S. § 7102. The MHPA must be "interpreted in conformity with the principles of due process to make

voluntary . . . treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others." *Id*. Section 113 of the MHPA provides as follows:

> Every person who is in treatment shall be entitled to all other rights now or hereafter provided **under the laws of this Commonwealth**, in addition to any rights provided for in [the MHPA]. Actions requesting damages, **declaratory judgment**, **injunction**, **mandamus**, writs of prohibition, habeas corpus, including challenges to the legality of detention or degree of restraint, and **any other remedies or relief granted by law** may be maintained in order to protect and effectuate the rights granted under [the MHPA].

50 P.S. § 7113 (emphasis added). Thus, the MHPA provides many forms of relief to vindicate the rights of those who are receiving, or should be receiving, adequate mental health treatment and are not.

While Bowman may focus on mandamus relief believing that it may be his best option for relief, this does mean with legal certainty that recovery under the other remedy options under these allegations is foreclosed. The essence of Bowman's Complaint is that his rights to adequate mental health treatment under the MHPA are being violated (in multiple ways), and he seeks to vindicate those rights before the Court so that he can receive such treatment. Applying the standard imposed by the highest appellate courts in the United States and this Commonwealth, a fair and less stringent reading of the Complaint should not limit the relief to only that set forth but should also consider the other forms of recovery available under the MHPA, including declaratory and injunctive relief. It is only then that a court can conclude "with certainty that **the law** permits **<u>no recovery</u>**," and that the preliminary objection should be sustained. *Danysh*, 845 A.2d at 263

(emphasis added). That standard is not met here and, therefore, the trial court's Order sustaining Brittain's preliminary objection should be reversed.

Compounding the majority's narrow reading of the Complaint is its sua sponte raising and resolution of issues **not included** in Brittain's preliminary objection. That preliminary objection asserted that the provision of mental health services in a prison is a matter of discretion for the prison's superintendent and, therefore, mandamus does not sound. (R.R. at 41-42.) The preliminary objection further set forth its view that Bowman is not entitled to a particular form of treatment from a particular provider, failing to recognize that the Complaint alleges that the mental health treatment provided at SCI-Frackville is inadequate. Brittain did not challenge in her preliminary objection the applicability of *Emerich* or the MHPA, or the allegations SCI-Frackville's mental health treatment practices violate that act. Issues not raised in a preliminary objection are waived. Pennsylvania Rule of Civil Procedure 1028(b), Pa.R.Civ.P. 1028(b) ("All preliminary objections shall be raised at one time."); *Commonwealth ex rel. Corbett v. Peoples Benefit Servs., Inc.*, 895 A.2d 683, 693 n.19 (Pa. Cmwlth. 2006). Nevertheless, in raising the legal issues and resolving them with its own determination as to why Bowman's reliance on *Emerich* and the MHPA is misplaced, the majority appears to become both advocate and adjudicator. *Bowman v. Brittain* (Pa. Cmwlth., No. 1204 C.D. 2023, filed Oct. 23, 2025), slip op. at 7-8. Our Supreme Court has been clear that this Court is not to sua sponte raise and resolve an issue that was not raised by the parties below. *Gibraltar Rock, Inc. v. Dep't of Env't Prot.*, 286 A.3d 713, 724-25 (Pa. 2022) (stating that "[a]n appellate court must address an appeal as it is filed and generally may not raise an issue sua sponte," and that this Court exceeded its authority when it raised three issues sua sponte). Moreover, it is not clear or free from doubt to me that

Bowman's recovery would be foreclosed, particularly in the absence of any input from the parties.

It is for these reasons why I, respectfully, dissent from the majority and would reverse the trial court's Order sustaining Brittain's preliminary objection and dismissing Bowman's pro se complaint.

_____
RENÉE COHN JUBELIRER, President Judge

Judge McCullough and Judge Wallace join this opinion.